**Peter and Roberta STELLATO, on behalf of their handicapped child, REBECCA, Plaintiffs,**

v.

**BOARD OF EDUCATION OF the ELLENVILLE CENTRAL SCHOOL DISTRICT, and The State Review Officer of the New York State Education Department, Defendants.**

No. 93–CV–242.

United States District Court, N.D. New York.

Jan. 31, 1994.

Roberta Stellato, Peter Stellato, pro se.

Anderson, Banks, Curran & Donoghue, Mount Kisco (James P. Drohan, of counsel), for School Dist.

Robert Abrams, Atty. Gen., Albany (Lawrence L. Doolittle, of counsel), for State Review Officer.

McAVOY, Chief Judge.

## I. BACKGROUND

This is an action commenced pursuant to the Individuals with Disabilities Education Act (IDEA), as amended, 20 U.S.C. § 1400 *et seq.* The IDEA creates a comprehensive scheme for assuring that handicapped children receive a "free appropriate public education." 20 U.S.C. § 1401(18). The statute requires states to set up due process procedures to ensure that children with disabilities obtain the education to which they are entitled.

Article 89 of the New York Education Law § 4401 *et seq.* and 8 N.Y.C.R.R. part 200, were adopted, in part, to comply with the State's obligations under the IDEA. New York's procedures provide that committees on special education (CSE) at the local school district, identify, review and evaluate the status of each handicapped child in the school district and make recommendations to the child's classification and placement. Education Law § 4402; 8 N.Y.C.R.R. 200.2, 200.3, 200.4.

Both federal and state law apply to educational placements of children with handi-

capping conditions. If parents are dissatisfied with the CSE's final recommendation, they may appeal to an impartial hearing officer appointed by the local board of education. 20 U.S.C. § 1415; Education Law § 4404(1); 8 N.Y.C.R.R. 200.5(c). If aggrieved by a hearing officer's determination, the parents may appeal to the state educational agency—in this case, the State Review Officer (SRO).

Initially, New York law provided that appeals from determinations of impartial hearing officers were decided by the New York State Commissioner of Education. As of July 1, 1990, an appeal from a final determination of the impartial hearing officer must be taken to the State Review Officer. This change in procedure occurred as a result of the Federal Secretary of Education's insistence that the state plan be changed to remove any persons with educational policy functions from the appeal review process. This change was intended to assure neutrality in appellate reviews. The IDEA provides that either party may appeal a final decision of the State Review Officer by bringing an action in state or federal court.

The instant lawsuit does not concern itself with any substantive issue regarding the placement or classification of Rebecca, but, instead, the lawsuit addresses the issue of whether the school district intentionally delayed with Rebecca's required triennial evaluation[1] scheduled at the Yale Child Study Center (Yale) located in Connecticut.

It must be noted that the appropriateness of Yale as the evaluation site was addressed in an impartial hearing on April 3, 1991. The impartial hearing officer determined that the school district had a right to have the evaluation done at Yale. Plaintiffs never appealed this determination to the State Review Officer.

A second impartial hearing, which is the genesis of this litigation, was held on April 30 and June 26, 1992, regarding plaintiffs' allegation that the school district unduly delayed Rebecca's evaluation process at Yale. This hearing is wholly separate from the first hearing. In the second hearing, the impartial hearing officer determined that the school district did not intentionally delay the evaluation process, and this determination was later affirmed by the State Review Officer. The plaintiffs, aggrieved by this decision, filed the instant lawsuit on or about February 19, 1993.

It should be noted that a triennial evaluation was finally done on Rebecca a little over a month after the plaintiffs filed the instant complaint. The evaluation was done at Newington Children's Hospital, and plaintiffs are presently challenging this evaluation as being inadequate and also challenging the school district's recommendation as being inappropriate—there is a pending impartial hearing. The Newington's evaluation is not part of this litigation, however.

Both defendants have moved for summary judgment pursuant to Fed.R.Civ.P. 56.

## II. MOTION FOR SUMMARY JUDGMENT

Rule 56(c) provides that the court may grant summary judgment where there are no genuine issues of material fact for trial. Fed.R.Civ.P. 56(c). If there are no genuine issues, the movant is entitled to judgment as a matter of law. When the movant meets this standard, the opposing party must present sufficient facts to demonstrate that there exists some genuine issues of material fact in order to defeat the movant's motion for summary judgment. An issue is *genuine* if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court must view the evidence in light most favorable to the party opposing the motion. *See Lopez v. S.B. Thomas, Inc.,* 831 F.2d 1184, 1187 (2d Cir.1987).

When the opposing party bears the ultimate burden of proof on a particular issue,

---

1. These tests are mandated under the statute in order for Rebecca to be eligible for special edu-

cational placement.

such party may defeat a properly supported summary judgment motion by producing specific facts which demonstrate a genuine issue of material fact on that issue. *See Montana v. First Federal Savings and Loan Assoc. of Rochester,* 869 F.2d 100, 103 (2d Cir.1989); *see also Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990). Here, plaintiff bears the ultimate burden of proof.

The State Review Officer has moved to dismiss the complaint contending that he is not a proper party defendant in the instant lawsuit. The plaintiffs, in their "Reply Affidavit," [2] have agreed to dismiss the State Review Officer from the lawsuit. Thus, the said defendant is dismissed from this action.

The school district, in its motion for summary judgment, has advanced three theories: (1) The appropriateness of Yale as the evaluation center can no longer be raised as an issue in this lawsuit because the doctrine of collateral estoppel would apply to the April 3, 1991 decision by the impartial hearing officer who determined that Yale was in fact an appropriate place for the evaluation; (2) To the extent that any issues regarding "intentional delay" were not precluded by the April 3, 1991 decision by the impartial hearing officer, summary judgment would be appropriate giving "due weight" to the administrative proceedings below; and (3) Plaintiffs' grievances regarding the appropriateness of Yale as the evaluation center is now moot. (District Mem. at 7–8).

## A. APPROPRIATENESS OF YALE AS THE EVALUATION SITE

On April 3, 1991, following an impartial hearing on the issue of the appropriateness of Yale as the evaluation site, the hearing officer found that "the [school district] ha[d] the right to have the tri-annual evaluation done at Yale University, and [he directed] that the parents sign the consent forms so that the evaluation can be conducted at the earliest opportunity." Plaintiffs never appealed this decision to the State Review Officer. In the instant complaint, plaintiffs again raise the issue of whether Yale was in fact an appropriate place for Rebecca's evaluation.

The Second Circuit has stated that "[t]he philosophy of the Education for All Handicapped Children Act [now the IDEA] is that a plaintiff must first exhaust the state administrative remedies provided under the Act, including the administrative appeals provisions, before bringing an action in federal court." *Riley v. Ambach,* 668 F.2d 635, 640 (2d Cir.1981); *see Mrs. W. v. Tirozzi,* 832 F.2d 748, 756 (2d Cir.1987). Simply stated, unless plaintiffs first exhaust available state administrative remedies, the federal courts are without jurisdiction to hear the case. *See, e.g., Vander Malle v. Ambach,* 667 F.Supp. 1015, 1029 (S.D.N.Y.1987). There are two important policies for requiring exhaustion of administrative remedies under the IDEA. First, such a requirement allows expert administrators to focus and illuminate the issues to be considered by the court, and second, it provides the state with an opportunity to correct official abuse without the need to resort to costly and expensive litigation. *Id.*

The IDEA is specific in stating that a party aggrieved by a decision of an impartial hearing officer must appeal such a decision to the State educational agency—here the State Review Officer—before the matter can be brought in a federal court. 20 U.S.C. §§ 1415(c) & (e). In the case at bar, it is undisputed that plaintiffs failed to appeal the April 3, 1991 decision wherein the impartial hearing officer determined that Yale was indeed the appropriate place for Rebecca's evaluation. Thus, the plaintiffs have failed to exhaust their administrative remedies on the issue of whether Yale was the appropriate evaluation site, and consequently, this court lacks subject matter jurisdiction to address the said issue.

This determination does not end our inquiry, however. The court must now address

---

2. This "Reply Affidavit" was the only thing plaintiffs submitted in opposition to defendant State Review Officer's motion for summary judgment.

Considering plaintiffs' *pro se* status, the court did not require plaintiffs to submit a memorandum of law.

the issue of whether the school district unduly delayed the evaluation process for Rebecca in violation of the IDEA. This issue was at the heart of the second impartial hearing held on April 30 and June 26, 1992, a determination of which was later affirmed by the State Review Officer on October 20, 1992.

### B.  UNDUE DELAY

The school district is seeking to dismiss the undue delay claim on the theory of mootness. It is their contention that the issue of undue delay is now moot "in light of the fact that an evaluation eventually was completed and supplied on March 29, 1993 at Newington Children's Hospital." (Sch. Dist. Mem. at 12). Thus, the argument goes, since the evaluation was eventually done on Rebecca, there is no longer a "live" controversy for this court to address.

■ "In general[,] a case becomes moot 'when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'" Murphy v. Hunt, 455 U.S. 478, 481, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982) (quoting United States Parole Comm'n v. Geraghty, 445 U.S. 388, 396, 100 S.Ct. 1202, 1208, 63 L.Ed.2d 479 (1980)). The requirement that a case be "live" applies to every stage of a court's proceedings. R.C. Bigelow, Inc. v. Unilever N.V., 867 F.2d 102, 105 (2d Cir.1989). If a case is moot, then the court is without jurisdiction to address the merits of the litigation. Id. (citing Powell v. McCormack, 395 U.S. 486, 496, 89 S.Ct. 1944, 1951, 23 L.Ed.2d 491 (1969)). With these considerations in mind, we now look to the facts of our case.

■ In the complaint, plaintiffs are seeking declaratory, injunctive and monetary relief. As part of their declaratory and injunctive relief, plaintiffs are asking the court to declare that the school district did indeed unduly delay Rebecca's triennial evaluation in violation of IDEA, and they also seek an order forcing the school district to provide the required services to Rebecca. These demands have been rendered moot in light of the fact that an evaluation was finally completed and supplied by Newington Children's Hospital soon after the initiation of the instant lawsuit. This evaluation has rendered plaintiffs' demands moot because the parties no longer have an interest in the outcome of the instant litigation. More specifically, a final determination on the issue of undue delay would not affect the parties involved because what the plaintiffs are attempting to accomplish through declaratory and injunctive relief has already been accomplished through the evaluation done at Newington Children's Hospital. Consequently, plaintiffs do not have a "legally cognizable" interest in the outcome of the case and thus, plaintiffs' claims seeking declaratory and injunctive relief are moot.

The fact that plaintiffs are also seeking monetary relief presents a different problem. Court have stated that, under IDEA, "damages, however limited, are not within the scope of relief authorized ... absent exceptional circumstances." Anderson v. Thompson, 658 F.2d 1205, 1209–1210 (7th Cir.1981); see Gerasimou by Gerasimou v. Ambach, 636 F.Supp. 1504, 1511–12 (E.D.N.Y.1986). As the Supreme Court observed in School Committee of Burlington v. Department of Education, 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985), the purpose of the IDEA is to secure for each handicapped child a free appropriate education, and the availability of any remedy under the state must be assessed in light of that goal. Id. 471 U.S. at 370, 105 S.Ct. at 2003. Thus, it is generally thought that the IDEA does not avail plaintiff to monetary damages. There are two exceptional circumstances, however, which constitute exceptions to this general rule.

The first of such circumstance was addressed in Tatro v. Texas, 516 F.Supp. 968 (N.D.Tex.1981). There, a child's physical health would have been endangered had the parents not made alternative arrangements to those offered by the school system. "[W]hen a court subsequently determines that the services in dispute were necessary to protect the physical health of the child and also were services that should have been

provided by the school district, the district court has the statutory authority to recompense parents for the costs of those services the school district failed to provide." *Anderson,* 658 F.2d at 1214.

A second exceptional circumstance would be when a school district acts egregiously and in bad faith by failing to comply with the procedural safeguards set by sections 1415 of the IDEA. *See id.; Gerasimou by Gerasimou,* 636 F.Supp. at 1511–12. "Those procedural provisions were Congress' way of assuring appropriate programming for handicapped children." *See Anderson,* 658 F.2d at 1214. If violations of the said section do occur, parents should be given power to unilaterally arrange for appropriate services, and if the parents later prevail in their judicial action, money damages for the cost of these services should be awarded. *Id.; Gerasimou by Gerasimou,* 636 F.Supp. at 1512.

■ In the instant case, plaintiffs have failed to sufficiently submit into evidence any facts which would entitle them to monetary relief. There is simply no evidence to show that Rebecca was at any time endangered by the alleged actions of the school district. Furthermore, there is no evidence to show that the school district in any way egregiously failed to comply with the procedural requirements of section 1415 of the IDEA. The record indicates that the ultimate reason for the delay was due to a dispute between the plaintiffs and the school district on how the accommodation expenses for the Yale evaluation was to be covered. Plaintiffs had demanded that they receive a $400 cash advance for the trip, but the school district denied the request stating that cash advances were illegal under New York law and against the policy of the Board of Education. Thus, the school district required that plaintiffs be reimbursed upon submission of receipts. Even if the facts are looked at in light most favorable to the plaintiffs, this court fails to see any evidence of bad faith or egregious conduct on the part of the school district. The school district acted in compliance with the policies of the statute, and had

given the plaintiffs three options for their reimbursement, none of which plaintiffs accepted. Consequently, plaintiffs have failed to demonstrate that they are indeed entitled to monetary damages under the IDEA, and therefore, the State Review Officer's determination that there was no undue delay by the school district will not be disturbed by this court. The court is mindful of the fact that additional evidence beyond the scope of the records of the state administrative proceedings may be heard by this court at the request of the parties, 20 U.S.C. § 1415(e)(2), but it is concomitantly noted that plaintiffs have failed to submit any such additional evidence into the record in the instant case. Thus, summary judgment would be appropriate here.

Plaintiffs demand for attorney's fees must also be dismissed. In 1986, Congress had amended the IDEA to allow prevailing parents to collect certain attorney's fees under the Act. 20 U.S.C. § 1415(e)(4)(B). This amendment is of no moment to the instant case, however, because the statute gives the parents attorney's fees only if the parents are the "prevailing party." 20 U.S.C. § 1415(e)(4)(B). The plaintiffs are not the prevailing parties in the instant case, and consequently, they are not entitled to attorney's fees.

Plaintiffs have also brought their claim under 42 U.S.C. § 1983 and section 504 of the Rehabilitation Act. Apart from merely stating that plaintiffs are bringing a § 1983 claim, plaintiffs have not made any allegation pertaining to the said cause of action. Specifically, no constitutional violations have been alleged, and thus, plaintiffs' § 1983 claim is dismissed.

Plaintiff's claim under section 504 of the Rehabilitation Act is also dismissed. This is because plaintiffs' allegations claiming violation of the said Act were made only against the State Review Officer. As earlier stated, plaintiffs have agreed to dismiss the said defendant from this lawsuit, and thus, no cause of action exist under section 504 of the Rehabilitation Act.

### III. CONCLUSION

For the stated reasons, defendant State Review Officer is dismissed from the instant action, and furthermore, defendant school district's motion for summary judgment is hereby granted.

**IT IS SO ORDERED.**