Walter WENGER, individually and as a parent and natural guardian of his son, Steven Wenger; Geraldine Wenger, individually and as a parent and natural guardian of her son, Steven Wenger, Plaintiffs,

v.

CANASTOTA CENTRAL SCHOOL DISTRICT; Donald J. Harvey, individually and as Chairman of the Committee on Special Education for the Canastota Central School District; Craig King, individually and as Superintendent of the Canastota Central School District, Defendants.

No. 93–CV–1601(FJS)(GJD).

United States District Court, N.D. New York.

Oct. 3, 1997.

**148**

Walter Wenger, Canastota, NY, Plaintiff, pro se.

Geraldine Wenger, Canastota, NY, Plaintiff, pro se.

Hogan & Sarzynski (Edward J. Sarzynski, of counsel), Binghamton, NY, for Defendants.

## MEMORANDUM–DECISION and ORDER

SCULLIN, District Judge.

### Introduction

Plaintiffs Walter and Geraldine Wenger[1] bring this action pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 et seq., and Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. §§ 794 et seq., seeking review of a determination by the state review officer that Defendant Canastota Central School District ("CCSD") was not obligated to provide compensatory special education and related services to their son Steven, even though it had failed to provide Steven with a free appropriate public education. The Plaintiffs also claim that they are entitled to compensatory damages under the IDEA and Section 504, and punitive and compensatory damages for the alleged violation of the Due Process Clause of the Fourteenth Amendment by Defendants CCSD, Harvey, and King (collectively, the "Defendants").[2] Presently before the Court is a motion for summary judgment brought by the Defendants pursuant to Rule 56 of the Federal Rules of Civil Procedure.

---

1. All references to the "Plaintiffs" include Walter, Geraldine, and Steven Wenger. The Court notes that the Second Circuit has held that parents may not proceed pro se on behalf of minors in federal court. *See Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61–62 (2d Cir.1990). In the present action, however, the Wengers were represented by counsel when they filed this action. Further, the Court finds that resolution of this action on its merits is in the best interests of all the parties concerned.

2. The Plaintiffs' complaint lists three causes of action: (1) violation of the IDEA for the CCSD Defendants' failure to provide Steven with a free, appropriate public education; (2) review of state review officer's decision finding that despite CCSD's failure to provide a free appropriate public education, the CCSD was not obligated to provide compensatory special education and related services; and (3) violation of the Due Process Clause. Because the state review officer has already found that the CCSD failed to provide a free appropriate public education, the Court finds that the Plaintiffs' first cause of action is actually a part of their second cause of action. The remaining issues then become whether the state review officer was correct in denying compensatory special education and related services and whether the Plaintiffs are entitled to compensatory damages under the IDEA and Section 504, as well as the Plaintiffs' claim under the due process clause.

## Background

In March 1991, when Steven was fifteen years old, he was seriously injured in an automobile accident, sustaining multiple trauma, including a severe head injury. Since that time, Steven has remained in a coma, classified as traumatic brain injured.[3] After Steven's initial hospitalization, he was transferred to a rehabilitation facility in Pennsylvania.

On September 17, 1991, the Plaintiffs referred Steven to the CCSD's committee on special education ("CSE") for an individual evaluation and determination of Steven's eligibility for special education programs and services. On March 20, 1992, the Plaintiffs consented to an evaluation of Steven to be conducted by the CSE. On March 26, 1992, CCSD's school psychologist, speech pathologist, and occupational therapist evaluated Steven in Pennsylvania.

On April 15, 1992, the CSE met with the Plaintiffs and the Plaintiffs' attorney to review the evaluation data and to prepare an individualized education program ("IEP") for Steven. The CSE recommended that Steven receive a total of two hours per day of special services, including special education, speech/language therapy, and physical and occupational therapy. The Plaintiffs accepted the proposed IEP, and CCSD approved the IEP on May 13, 1992.

Thereafter, CCSD attempted to arrange for delivery of the IEP services by contract with a Pennsylvania school district. However, on May 27, 1992, Steven was transferred to Crouse–Irving Memorial Hospital in Syracuse, where he underwent a cranioplasty and had a shunt inserted. In June 1992, following his recovery from surgery, Steven was transferred to St. Camillus Health and Rehabilitation Center in Syracuse. In July 1992, Steven was again admitted to Crouse–Irving. Also at this time, the CSE chairperson received approval from Steven's doctors in Pennsylvania and New York to provide the services set forth in the IEP. Thereafter, a special education teacher employed by the Board of Cooperative Educational Services of Onondaga, Cortland, and Madison Counties ("BOCES") began providing special education to Steven on behalf of the CCSD.

By letter dated November 19, 1992, the Plaintiffs expressed their concern that the CCSD (through its agent BOCES) was failing to provide Steven with some of the services set forth in Steven's IEP, and requested an impartial hearing to address this failure. On November 24, 1992, the CCSD appointed a hearing officer, who granted the Plaintiffs' request to delay the hearing so that the Plaintiffs could review materials and prepare for the hearing. By letter dated December 10, 1992, a BOCES administrator informed the CSE chairperson that BOCES would discontinue providing services to Steven until Crouse–Irving's doctors and staff provided BOCES with information concerning Steven's medical condition and how services could be provided at optimum conditions.

The Plaintiffs' hearing was scheduled to begin on February 24, 1993, but the parties entered into a stipulation pursuant to which the Plaintiffs agreed to withdraw their request for a hearing and the CCSD agreed to use its best efforts to implement Steven's IEP. By letter dated March 19, 1993, the Plaintiffs changed their minds and asked the hearing officer to reschedule the hearing. The hearing was held on April 23, 1993. At the hearing, the CSE chairperson testified that Steven was not receiving services pursuant to his IEP because BOCES had not received the information about Steven's medical condition from Steven's doctors.

In a decision dated June 15, 1993, the hearing officer held that Steven's IEP was not prepared with sufficient information to allow teachers and service providers to plan appropriate programs for Steven. The hearing officer directed the CSE to prepare a new IEP for the 1993–94 school year. The

---

3. "Traumatic brain injury" is defined as "an injury caused by an external physical force ... with resulting impairments that adversely affect educational performance. The term includes open or closed head injuries ... resulting in mild, moderate or severe impairments." N.Y. Comp.Codes R. & Regs. tit. 8, § 200.1(mm)(12). In 1992, a neurologist examined Steven and determined that he was in a persistent vegetative state. This determination was confirmed in late 1994 by Steven's physician at Crouse–Irving Memorial–Hospital.

Plaintiffs appealed the hearing officer's decision to the state review officer ("SRO") because the hearing officer failed to address their contention that the CCSD failed to provide the services included in Steven's IEP.

In a decision dated August 26, 1993, the central issue before the SRO was whether the "CCSD provided the services set forth in Steven's IEP." While finding that the CCSD had failed to provide services set forth in Steven's IEP, the SRO denied the Plaintiffs' request for compensatory special education and related services.[4] On December 27, 1993, the Plaintiffs filed the present action.

## Discussion

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is warranted if, when viewing the evidence in a light most favorable to the non-movant, the court determines that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Eastman Kodak Co. v. Image Technical Servs., Inc.,* 504 U.S. 451, 457, 112 S.Ct. 2072, 2077, 119 L.Ed.2d 265 (1992); *Commander Oil v. Advance Food Serv. Equip.,* 991 F.2d 49, 51 (2d Cir.1993). After discussing the IDEA, the Court will address the Plaintiffs' causes of action *seriatim.*

### *IDEA*

The IDEA is designed to assist states to meet the educational needs of children with disabilities, and it establishes an enforceable right to a "free appropriate public education." [5] *Mrs. W. v. Tirozzi,* 832 F.2d 748, 750–51 (2d Cir.1987) (citing 20 U.S.C. § 1400(c)). A free appropriate public education is defined as "special education and related services" tailored to the individual needs of the child.[6] Further, the Supreme Court has determined that a "free appropriate public education" must consist of "educational instruction specially designed to meet the unique needs of the [disabled] child, supported by such services are necessary to permit the child 'to benefit' from the instruction." *Board of Educ. v. Rowley,* 458 U.S. 176, 188–89, 102 S.Ct. 3034, 3042, 73 L.Ed.2d 690 (1982).

The IDEA imposes a number of procedural requirements on participating states in order to safeguard a child's right to an appropriate education. 20 U.S.C. § 1415. The procedural safeguards "guarantee parents both an opportunity for meaningful input into all decisions affecting their child's education and the fight to seek review of any decisions they think inappropriate." *Honig v. Doe,* 484 U.S. 305, 311–12, 108 S.Ct. 592, 598, 98 L.Ed.2d 686 (1988). Any party aggrieved by the outcome of the state administrative proceeding may bring an action to review the administrative decision in any state or federal court of competent jurisdiction. 20 U.S.C. § 1415(e)(2).

## I. Compensatory Education and Related Services

■ In the present case, the SRO found that the CCSD failed to provide Steven with an appropriate education, but nevertheless Plaintiffs' request for Steven to receive thirty-three months of compensatory special education and related services beyond his twenty-first birthday.

■ Generally, under the IDEA, "a [disabled] child does not have a right to demand

---

**4.** The SRO's decision found that the CCSD failed to provide services set forth in Steven's IEP, but did not explicitly state that the CCSD failed to provide Steven with a free appropriate public education. The Court finds that implicit in the SRO's finding that the CCSD failed to provide services pursuant to Steven's IEP is that the CCSD failed to provide Steven with a free appropriate public education.

**5.** Prior to 1990, the IDEA was known as the Education of the Handicapped Act or the Education of All Handicapped Children Act. *See* 20 U.S.C. § 1400(a).

**6.** "Special education" is defined as "specially designed instruction to meet the unique needs of a child with a disability, including instruction conducted in the classroom, in the home, in hospitals and institutions, and in other settings." 20 U.S.C. § 1401(16)(A). "Related services" include physical and occupational therapy services as well as medical services for diagnostic and evaluative purposes as may be required to assist a child with a disability to benefit from special education. 20 U.S.C. § 1401(17).

a public education beyond the age of twenty-one." *Mrs. C. v. Wheaton*, 916 F.2d 69, 75 (2d Cir.1990) (citation omitted). The Second Circuit, however, allows for compensatory education for a child over twenty-one years where there has been a gross violation of the IDEA. *Id.* at 75; *see also Garro v. Connecticut*, 23 F.3d 734, 737 (1994). But even where gross violations occur, there is no obligation under the IDEA to provide a child with compensatory education equal to the length of time he or she was denied an appropriate education because "compensatory education is not a contractual remedy, but an equitable remedy, part of the court's resources in crafting 'appropriate relief.'" *Parents of Student W. v. Puyallup Sch. Dist.*, 31 F.3d 1489, 1497 (9th Cir.1994).. When considering an equitable remedy, courts must apply a fact-specific analysis, and may decide that a generalized award of compensatory education is not appropriate under the circumstances. *Id.*

In denying the Plaintiffs' request for compensatory education and related services, the SRO relied in part upon *Application of a Child with a Handicapping Condition*, SRO No. 91–12, for support. In *Application of a Child with a Handicapping Condition*, a school district failed to provide a disabled child with special education related services for one year while he was enrolled in a parochial school. After a hearing on the matter, the child's parents requested to be awarded compensatory services. The hearing officer determined that compensatory services were not appropriate because it could not be established that the child had regressed as a result of the school district's failure to provide the services. The SRO, in the present case, adopted this reasoning, and found that there was no basis for the provision of compensatory services.

In determining whether school districts have complied with the IDEA, the Supreme Court has recognized that courts do not have special expertise in the field of educational policy and should not substitute the court's judgment for that of school authorities.

*Rowley*, 458 U.S. at 206, 102 S.Ct. at 3051. A court reviewing the findings and conclusions reached in a state administrative proceeding must base its decision on the preponderance of the evidence, after reviewing the administrative record and any additional evidence presented. 20 U.S.C. § 1415(c)(2). In doing so, due deference is to be afforded administrative decisions made by state officials who possess expertise in the field. *Briggs v. Board of Educ.*, 882 F.2d 688, 693 (2d Cir.1989) (citing *Rowley*, 458 U.S. at 207–08, 102 S.Ct. at 3051). Here as in *Application of a Child with a Handicapping Condition*, the Plaintiffs have failed to demonstrate that Steven's condition regressed as a result of the Defendants' failure to provide an appropriate education in a timely and consistent manner. The SRO in deciding against awarding compensatory education and related services, found that such an equitable remedy would not be appropriate under these circumstances. Therefore, according due deference to decision of the SRO and considering the preponderance of evidence in the present case, the Court finds that compensatory education and related services are not appropriate.

## II. Compensatory Damages for expenses incurred under the IDEA and Section 504

The Plaintiffs also seek compensatory damages in the amount of $3,500,000 as compensation for the money expended in their administrative and legal efforts to enforce Steven's right to an appropriate education as well as the lost income and loss of business resulting from these efforts. The Defendants argue (1) that under the IDEA, compensatory relief may only be obtained for those educational expenses incurred from unilaterally providing services to Steven, and (2) that the Plaintiffs cannot recover compensatory damages under Section 504 absent a showing of intentional discrimination by the Defendants.[7] The Defendants also argue

---

**7.** The Defendants ask the Court to reconsider its ruling of June 10, 1994 stating that a showing of intentional discrimination is not required under Section 504 in order to recover compensatory damages. The Court declines the Defendants' request and reaffirms its position for the reasons stated in its June 10, 1994 decision.

that Plaintiffs have not demonstrated that the Defendants violated Section 504.

### A. Compensatory Damages and the IDEA

■ The IDEA does not provide for compensatory money damages. *See Stellato v. Board of Educ. of the Ellenville Cent. Sch. Dist.,* 842 F.Supp. 1512, 1516 (N.D.N.Y.1994); *Charlie F. v. Board of Educ. of Skokie,* 98 F.3d 989 (7th Cir.1996). Courts have held, however, that pursuant to the IDEA's provision allowing district courts to grant "appropriate relief," 20 U.S.C. § 1415(e)(2), compensatory relief may be appropriate in the form of reimbursement where parents have unilaterally obtained special education and related services in situations where the school district has failed to provide an appropriate education or program. *See. e.g., Burlington Sch. Comm. v. Department of Educ. of Massachusetts,* 471 U.S. 359, 368, 369, 105 S.Ct. 1996, 2001, 2002, 85 L.Ed.2d 385 (1985); *Stellato,* 842 F.Supp. at 1516–17.[8] In the present case, the Plaintiffs have failed to present any evidence demonstrating that they took unilateral action to provide appropriate services for Steven. Therefore, the Court finds that the Plaintiffs are not entitled to compensatory relief in the form of reimbursement for their administrative and legal costs or from the lost income resulting from their efforts. *See Straube v. Florida Union Free Sch. Dist.,* 801 F.Supp. 1164, 1182 (S.D.N.Y.1992) (stating that parental efforts may be reimbursed only where the parents actually provide the services to which the child was entitled, e.g., transportation).

### B. Compensatory Damages and Section 504

■ The Plaintiffs claim that the Defendants discriminated against Steven on the basis of his disability by failing to provide Steven with a free appropriate public education, and as a result, they are entitled to compensatory damages. The Defendants argue that the Plaintiffs have not demonstrated that Section 504 was violated.

In addition to their obligation to provide an appropriate education under the IDEA, state and local educational agencies are required to provide a free appropriate education for children with disabilities pursuant to Section 504. *See e.g., Yankton Sch. Dist., v. Schramm,* 93 F.3d 1369, 1376 (8th Cir.1996); *see also* 34 C.F.R. § 104.33 (finding that regulation implementing Section 504 requiting the recipients of federal assistance that operate public schools to provide a free appropriate public education). Section 504 states, in relevant part, that "[n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability,·be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794. As such, Section 504 provides relief from discrimination, whereas the IDEA provides relief from inappropriate educational placement decisions, regardless of discrimination. *Brantley v. Independent Sch. Dist.,* 936 F.Supp. 649, 656 (D.Minn.1996).

"The language of [Section 504] is instructive. It prohibits exclusion, denial of benefits, and discrimination 'solely by reason of ... [disability].'" *Monahan v. Nebraska,* 687 F.2d 1164, 1170 (8th Cir.1982). "That a court may ... come to the conclusion that an incorrect evaluation has been made, and that a different placement must be required under [the IDEA], is not necessarily the same thing as a holding that a [disabled] child has been discriminated against solely by reason of his or her [disability]." *Id.* at 1170–71. Therefore, something more than a mere violation of the IDEA is necessary in order to show a violation of Section 504 in the context of educating children with disabilities, i.e., a plaintiff must demonstrate that a school district acted with bad faith or gross misjudgment. *See Brantley,* 936 F.Supp. at 657 (citing *Monahan,* 687 F.2d at 1170–71).

---

**8.** To the extent that some courts have characterized reimbursement as an exception to the rule against awarding compensatory monetary damages under the IDEA, the Court notes that the Supreme Court has specifically stated that reimbursement is not a form of damages, but a retroactive payment that a school district should have paid all along. *Burlington,* 471 U.S. at 370–71, 105 S.Ct. at 2003.

In the present case, the Plaintiffs' argument that Steven was discriminated against because of his disability stems from IDEA-type educational decisions, i.e., the Defendants failed to timely assess and diagnose Steven's disability, and the Defendants failed to implement Steven's IEP in a timely and consistent manner. The Court finds that the Plaintiffs have not provided evidence that the Defendants acted with bad faith or gross misjudgment with respect to Steven's education. Instead, the record demonstrates that the severity and delicateness of Steven's condition often prevented the Defendants from implementing Steven's IEP in a timely and consistent manner. As in *Brantley*, "[t]o the extent the [Defendants] made any inappropriate decisions, they were, at most, errors in professional judgment." *See id.* at 657. Accordingly, the Plaintiffs' claim for compensatory damages under Section 504 must be dismissed as a matter of law.

### III. Plaintiffs' Due Process Claim

The Plaintiffs also claim that the Defendants violated their procedural due process rights guaranteed by the Fourteenth Amendment by failing to comply with the IDEA's procedural requirements and by failing to provide Steven with an appropriate education.[9] "It is well-established that the requirements of procedural due process are triggered only when a protected interest is at stake." *See W.B. v. Matula*, 67 F.3d 484, 502 (3d Cir.1995). Assuming that children have a liberty interest in a free appropriate public education, *see Mrs. W. v. Tirozzi*, 832 F.2d 748, 751 (2d Cir.1987), the government may deprive one of that interest so long as the process afforded provides minimal constitutional procedural protections. *See Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).

In the present case, the Defendants provided the Plaintiffs with all the process that was due to them by convening CSE meetings and holding impartial hearings at the Plaintiffs' request. Further, the Plaintiffs were provided the opportunity to appeal the hearing officer's decision to the SRO, who partially ruled in their favor. Therefore, because the Plaintiffs were provided with sufficient due process, their due process claim lacks merit, and the Defendants are entitled to judgment as a matter of law.

### Conclusion

Therefore, it is hereby

ORDERED that the CCSD Defendants' motion for summary judgment is GRANTED, and the Plaintiffs' complaint is DISMISSED in its entirety.

**IT IS SO ORDERED.**

---

**9.** The Court notes that while parents of children with disabilities are entitled to bring actions based on alleged violations of the Due Process Clause of the Fourteenth Amendment, these actions must be brought pursuant to 42 U.S.C. § 1983. *See Mrs. W. v. Tirozzi*, 832 F.2d 748, 755 (2d Cir.1987). In the present case, the Plaintiffs failed to bring their due process claim pursuant to § 1983. However, because the Plaintiffs are proceeding pro se, the Court reads the Plaintiffs' claim as if it includes § 1983.