Aaron SABATINI and Sharon Sabatini
Individually and as parent of Aaron
Sabatini, Plaintiffs,

v.

CORNING–PAINTED POST AREA
SCHOOL DISTRICT,
Defendant.

No. 99–CV–6550.

United States District Court,
W.D. New York.

Dec. 29, 1999.

Bruce A. Goldstein, Bouvier & O'Connor, Buffalo, NY, for Aaron Sabatini, plaintiff.

James F. Young, Sayles, Evans, Brayton, Palmer & Tifft, Elmira, NY, for Corning–Painted Post Area School District, defendant.

## DECISION AND ORDER

LARIMER, Chief Judge.

Plaintiffs, Aaron Sabatini ("Aaron") and his mother, Sharon Sabatini ("Mrs.Sabatini"), commenced this action under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and 42 U.S.C. § 1983, alleging that defendant, Corning–Painted Post Area School District ("the District"), has denied Aaron his right to a Free Appropriate Public Education ("FAPE"), as guaranteed to him by IDEA. Plaintiffs have moved for a preliminary injunction directing the District to pay Aaron's tuition at an educational institution in Connecticut.

## BACKGROUND

Aaron, who was born on February 26, 1978, resides in the Corning–Painted Post Area School District. He has been diagnosed with generalized anxiety disorder, depressive disorder, and a nonverbal learning disability. He is classified as multiply disabled by the District's Committee on Special Education ("CSE").

On May 28, 1998, the CSE met to consider plaintiffs' request that Aaron receive a FAPE in a residential placement. The CSE agreed and recommended that Aaron receive schooling at a residential facility. On June 22, 1998, however, the District's Board of Education ("the Board") rejected the CSE's recommendation and appointed a new CSE to consider plaintiffs' request. On July 14, 1998, the new CSE again recommended a residential placement, but the Board rejected that recommendation as well.

On August 11, 1998, plaintiffs requested an impartial hearing under IDEA, alleging that Aaron had been denied a FAPE since the 1994–1995 school year. The parties later entered into a settlement agreement, under the terms of which the District agreed to "actively engage in a search for a residential placement" for Aaron, and to "provide an appropriate educational program for Aaron during the 1998–99, 1999–2000, and 2000–2001 school years or until such time as Aaron receives a high school diploma, whichever comes first." Defendant's Answer Ex. A.

The District alleges that it attempted, but was unable to find any residential placement that would accept Aaron. In February 1999, however, Mrs. Sabatini requested expense money to visit Mitchell College in Connecticut. Mitchell has a Learning Resource Center ("LRC") designed to provide services to students with disabilities. The District agreed to pay Mrs. Sabatini's travel expenses.

On April 8, 1999, Aaron was accepted at Mitchell. The District alleges that it then sought approval for Aaron's placement at Mitchell from the New York State Department of Education ("the Department") so that Aaron's tuition and costs could be paid for by the District. Under New York Education Law § 4402(2)(b)(2), all contracts with schools to provide educational services for a child with a disability are subject to the approval of the Commissioner of Education ("the Commissioner"). The Department responded that Mitchell was a post-secondary school and not listed

as an approved secondary special education school. The District therefore refused to place Aaron at Mitchell. The District alleges that it has been unable to find any other residential placement for Aaron.

On May 20, 1999, plaintiffs requested an impartial hearing, alleging that the District had failed to abide by the terms of the December 1998 settlement agreement by its failure to place Aaron at Mitchell and had failed to provide a FAPE for Aaron. The hearing was held on August 12, 1999, and on September 24, 1999, the Impartial Hearing Officer ("IHO") issued a decision in plaintiffs' favor. Specifically, the IHO found that: Aaron's placement in a nonapproved private residential placement was authorized by IDEA; the District had not met its burden of proof that it had provided Aaron with a FAPE; plaintiffs met their burden of proving that Mitchell is an appropriate educational placement for Aaron; compensatory education, *i.e.*, public education beyond the age of twenty-one to compensate for education to which a child was entitled, but of which he was deprived prior to reaching that age, was an authorized form of relief under IDEA; and the IHO had authority to grant compensatory education to Aaron. The IHO concluded that "[e]quity demands that the District place A[aron] at Mitchell in accordance with the parties' written [settlement] agreement." Complaint Ex. A. In support of her decision, the IHO also noted that the District itself had conceded at the hearing that it had not provided Aaron with a FAPE; the District's attorney had stated to the IHO, "[W]e cannot say to you that we can provide a free appropriate public educational program for Aaron. We can't." Impartial Hearing Transcript ("IHT") at 13.

On October 19, 1999, the District filed an appeal of the IHO's decision to the State Review Officer ("SRO"), who is employed by the Department of Education. N.Y.Educ.L. § 4404(2). Although federal regulations implementing IDEA provide that such an appeal is to be decided within thirty days after the request for review was made, 34 C.F.R. § 300.511(b)(1), there is no dispute that the SRO has not yet issued a decision, more than two months after the District filed its appeal.

Plaintiffs filed the complaint in this action on November 3, 1999. The First Claim for Relief alleges that the District's actions deny Aaron his right to a FAPE under IDEA and N.Y.Educ.L. Art. 89. The Second Claim for Relief alleges that the District has discriminated against Aaron in violation of § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. In the Third Claim for Relief, plaintiffs allege that the District has denied Aaron his rights under the ADA by depriving him of appropriate accessibility to essential services and programming. The Fourth Claim for Relief alleges that defendant has denied plaintiffs their rights to due process and equal protection as guaranteed by the Fourteenth Amendment to the United States Constitution. Plaintiffs seek declaratory and injunctive relief, $500,000 in compensatory damages, and their costs and attorney's fees.

Plaintiffs' motion for a preliminary injunction requests an order: (1) that the court assume and retain jurisdiction; (2) requiring defendant to implement the IHO's September 24, 1999 decision; and (3) enjoining defendant from pursuing an administrative appeal of the IHO's decision, pending an expedited trial or hearing on plaintiffs' motion for a preliminary injunction, during which time Aaron would be placed at Mitchell, or in the alternative, ordering defendant to place Aaron at Mitchell during the pendency of the administrative appeal.

## DISCUSSION

### I. Exhaustion of Administrative Remedies

■ In general, a plaintiff seeking to bring an action under IDEA must first exhaust his administrative remedies. *See*

*Blackmon ex rel. Blackmon v. Springfield R–XII School Dist.*, 198 F.3d 648, 655 (8th Cir.1999); *Hope v. Cortines*, 69 F.3d 687, 688 (2d Cir.1995). The same is true of suits under the Rehabilitation Act, *see Downey v. Runyon*, 160 F.3d 139, 145 (2d Cir.1998), and the ADA, *see Bonilla v. Muebles J.J. Alvarez, Inc.*, 194 F.3d 275, 278 (1st Cir.1999).

"The exhaustion requirement, however, is not jurisdictional and therefore 'is not to be applied inflexibly.' " *N.B. by D.G. v. Alachua County School Bd.*, 84 F.3d 1376, 1379 (11th Cir.1996) (quoting *Ass'n for Retarded Citizens of Alabama v. Teague*, 830 F.2d 158, 160 (11th Cir.1987)), *cert. denied*, 519 U.S. 1092, 117 S.Ct. 769, 136 L.Ed.2d 715 (1997). Accordingly, "exhaustion of the administrative remedies is not required where resort to administrative remedies would be 1) futile or 2) inadequate." *Id.*

■ The District contends that because its appeal to the SRO is still pending, plaintiffs have not yet exhausted their administrative remedies, and are therefore not entitled to relief in this court. As stated, however, though federal regulations provide that the SRO is to issue a final decision on any appeal within thirty days, the SRO has not done so, and the record contains no indication of the reason for the delay or the date when the appeal will be decided. The regulations do provide that the SRO "may grant specific extensions of time beyond [that thirty-day period] at the request of either party," 34 C.F.R. § 300.511(c), but there has been no representation here that either side requested any such extension, or that there is any good reason for the delay.

Under these circumstances, I believe it would be inequitable to penalize plaintiffs for a delay that they did not cause and over which they have no control. It strains logic to say that *plaintiffs* have not exhausted their administrative remedies when *defendant* appealed from a decision adverse to it, and a timely decision on that appeal has not been forthcoming. More-

over, although the SRO and the District are not necessarily united in interest, the SRO is an agent of the Department of Education, which denied approval of Mitchell for Aaron. It would be unfair to allow the Department of Education to drag out the administrative process and then use that delay to bar plaintiffs from filing suit in federal court. Therefore, in light of the special circumstances of this case, I reject defendant's contention that this court lacks jurisdiction because plaintiffs have not exhausted their administrative remedies. *See Murphy v. Arlington Central Sch. Dist. Bd. of Educ.*, No. 99 CIV. 9294, 1999 WL 1140872 *4 (S.D.N.Y. Dec.13, 1999) (stating that if SRO did not reach a final decision by date promised, court would not "hesitate to adjudicate Plaintiffs' claims for equitable relief . . .").

## II. Is the Commissioner of Education an Indispensable Party?

■ The District contends that the Commissioner is an indispensable party to this action because his permission is necessary for a school district to contract with a private residential school. *See* Fed. R.Civ.P. 19. I do not agree.

Prior to the Supreme Court's decision in *Florence County Sch. Dist. Four v. Carter*, 510 U.S. 7, 114 S.Ct. 361, 126 L.Ed.2d 284 (1993), the District's argument might have been persuasive. Prior case law from the Second Circuit had indicated that it was beyond a district court's authority to order a child to be placed in a private facility that had not been approved by the Commissioner. *See Antkowiak by Antkowiak v. Ambach*, 838 F.2d 635, 640–41 (2d Cir.), *cert. denied*, 488 U.S. 850, 109 S.Ct. 133, 102 L.Ed.2d 105 (1988). In *Carter*, however, the Court held that the requirement in 20 U.S.C. § 1401(a)(18)(B) that the school meet the standards of the state educational agency does not apply to private parental placements. *Id.* at 14, 114 S.Ct. 361. In doing so, the Court expressly rejected the Second Circuit's holding in *Tucker v. Bay Shore Union Free Sch. Dist.*, 873 F.2d 563,

568 (2d Cir.1989), that parental placement in a private school cannot be proper under IDEA unless the school meets the standards of the state agency. *Carter*, 510 U.S. at 14, 114 S.Ct. 361. The Court stated that "it hardly seems consistent with the Act's goals to forbid parents from educating their child at a school that provides an appropriate education simply because that school lacks the stamp of approval of the same public school system that failed to meet the child's needs in the first place." *Id.* (quoting *Carter By and Through Carter v. Florence County School Dist. Four*, 950 F.2d 156, 164 (4th Cir. 1991)).

*Carter*, then, "instructs us that in those limited circumstances where a child's right of access to the substantive aspect of a free and appropriate education comes into conflict with the approval process, the former must prevail." *Connors v. Mills*, 34 F.Supp.2d 795, 806 n. 8 (N.D.N.Y.1998). *See also Muller on Behalf of Muller v. Committee on Special Educ. of East Islip Union Free School Dist.*, 145 F.3d 95, 104 (2d Cir.1998) (noting that "parents need not have placed their child in a school that is specifically approved by the local school authorities"; citing *Carter*).[1]

As noted above, the District has concede that it has not provided Aaron with any FAPE. *See* IHT at 13. This case, then, does present a situation where a child's right to a FAPE is in direct conflict with the State's approval process. *Carter* makes clear that in that circumstance, the State's interest in maintaining its approval process must yield to the child's and society's strong interest in making a FAPE available when mandated by IDEA. I conclude, therefore, that the Commissioner is not an indispensable party to this action.

1. I recognize that *Carter* is factually not identical to the instant case, since the plaintiffs in *Carter* sought reimbursement after they had paid for their daughter's tuition at a private institution, whereas plaintiffs in the case at bar seek direct payment of Aaron's tuition by the District at the outset. I consider that a

## III. The Merits of Plaintiff's Motion for a Preliminary Injunction

### A. Legal Standards

■ "A party seeking a preliminary injunction must demonstrate '(1) irreparable harm should the injunction not be granted, and (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits and a balance of hardships tipping decidedly toward the party seeking injunctive relief.'" *N.A.A.C.P., Inc. v. Town of East Haven*, 70 F.3d 219, 223 (2nd Cir.1995) (quoting *Resolution Trust Corp. v. Elman*, 949 F.2d 624, 626 (2d Cir.1991)). The "'serious questions' prong is also frequently termed the 'fair ground for litigation' standard." *East Haven*, 70 F.3d at 223.

■ In some situations, a higher standard applies. "The moving party must make a 'clear' or 'substantial' showing of a likelihood of success where (1) the injunction sought 'will alter, rather than maintain, the status quo'—i.e., is properly characterized as a 'mandatory' rather than 'prohibitory' injunction; or (2) the injunction sought 'will provide the movant with substantially all the relief sought, and that relief cannot be undone even if the defendant prevails at a trial on the merits.'" *Jolly v. Coughlin*, 76 F.3d 468, 473 (2d Cir.1996) (quoting *Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 33–34 (2d Cir.1995)).

■ In the case at bar, plaintiffs do seek to alter the status quo by moving Aaron from his current, home-tutoring situation into the residential placement at Mitchell. Plaintiffs therefore have the burden of showing a clear or substantial likelihood of success on the merits, in addition to demonstrating irreparable harm

distinction without a difference, however, since the ultimate issue in both *Carter* and the instant case is the same: whether the school district can be made under IDEA to disburse funds to cover a child's cost of education at a private school.

should their requested relief not be granted.

With respect to irreparable harm, the District contends that plaintiffs have failed to establish this element because "[t]he District has continued to provide tutoring services for Aaron and continues to offer all secondary education courses needed by Aaron to receive a high school diploma at its East High School." Defendant's Brief at 8. I am not persuaded by this argument. The District itself has conceded that its tutoring services do not constitute a FAPE. The District concedes that it has failed to do what the law requires—provide Aaron with a FAPE consistent with his needs.

The record before me indicates that: two separate CSEs, composed of different sets of people, have recommended residential placement for Aaron; his treating psychologist, Matthew J. D'Ortona, Psy.D., has recommended that Aaron attend Mitchell, see IHT at 41–46, Administrative Record ("AR") at 174; the IHO found that Aaron is entitled to be placed at Mitchell; and the District itself, in the December 1998 settlement agreement, agreed to seek a residential setting for Aaron.

Aaron is now close to twenty-two years old, and the longer he goes without receiving a FAPE, or compensatory education, the worse the situation gets. The District, focusing on the "college" label attached to Mitchell, argues that Aaron should be denied the relief he seeks, because he is only entitled to receive a FAPE at a high school. The older Aaron gets, however, the less likely it becomes that an actual high school, even a residential one, will consider accepting him. The denial of a FAPE over an extended period does constitute harm, and the longer that denial continues, the more irreparable it becomes. See Murphy v. Arlington Central Sch. Dist. Bd. of Educ., No. 99 CIV. 9294, 1999 WL 980164 *4 (S.D.N.Y. Oct.28, 1999) (observing that Congress was concerned to avoid lengthy administrative appeals during which "the appropriateness of a child's educational placement remains in limbo"). I therefore find that plaintiffs have established the element of irreparable harm.

Next, I must consider whether plaintiffs have made a clear showing of a likelihood of success on the merits. I find that they have met that burden as well.[2]

At the heart of the District's arguments concerning this matter is its contention that IDEA does not permit payment of funds for *college* tuition. I believe, however, that defendant places too much emphasis on that label—"college"—and too little on the substance of the relief that plaintiffs seek. The issue is not what the name of the institution is, but whether it can provide Aaron with educational services that will compensate him for his not having received a FAPE.

Among the witnesses at the impartial hearing was Patricia A. Pezzullo, Ph.D., the Director of Mitchell's LRC. Dr. Pezzullo stated that she was a former high school special education teacher and school psychiatrist, and that she was familiar with the courses generally required for high school diplomas, but that if there were "anything specific or unusual in New York State," she was unaware of that. IHT at 88. She stated that Mitchell is "not a pseudo high school," and that it offers "college courses." Id. at 89. She also testified that at one point in the past, Mitchell had two students who, because of their anxiety conditions, had been unable to attend a public high school, and that Mitchell had been able to meet their needs. Id. at 91. She stated that she was not aware of any content in a typical high school English curriculum that would not be covered by Mitchell's English composition course. Id. at 94. She also testified extensively about how and why Mitchell would be able to meet Aaron's needs with respect to his disability.

---

**2.** Because I find that plaintiffs are likely to succeed on the merits of the claim under IDEA, I need not address the merits of their other claims at this juncture.

In addition to Dr. Pezzullo, Mrs. Sabatini, Dr. D'Ortona and Aaron himself testified at the impartial hearing. Each of them explained why they believed that Mitchell would be an appropriate setting for Aaron.

Based on this evidence, I conclude that at this stage of the case, plaintiffs have shown a clear likelihood of success on the merits. Although the factual record will need to be developed further before the court can determine whether plaintiffs are entitled to permanent relief, I find that they have presented enough evidence to warrant the issuance of a preliminary injunction.

The mere fact that Mitchell is a college and not a high school does not mean that it cannot provide Aaron with enough educational services for him to obtain a New York high school diploma. That is all plaintiff seeks. There is nothing before me to indicate that any particular scholastic areas required by New York State are not covered by Mitchell's courses. For that matter, introductory college courses might well be *more* comprehensive or stringent than high school classes, so there would seem to be little reason for New York educational authorities to reject them as insufficient.

In fact, there is evidence that some students from within the District have been allowed to take courses for high school credit at a local college, Corning Community College ("CCC"), and that there had been some discussions about Aaron attending CCC. IHT at 51–53. Although that is not dispositive of the legal issue of whether IDEA permits college study to be used as a form of compensatory education, it is nevertheless some indication that a student may apply college courses toward a high school diploma.

It should also be noted that the District itself appears to have been less than fully cooperative in attempting to determine whether Mitchell would in fact be able to provide Aaron with the educational services he needs. The administrative record contains a letter dated February 9, 1999, from Mrs. Sabatini to Pat Dwyer, the Guidance Counselor at East High School. The letter states, *inter alia*, that

> [i]f Aaron's application [to Mitchell] is accepted, Mitchell is willing to coordinate· Aaron's program around the subjects he still needs to receive his NYS Regents/High School Diploma through the Corning–Painted Post School District. Ellen [Robinson] recommended Aaron meet with you to identify the courses still required for him to graduate and to go through the catalog and identify the courses that will apply. We will need this documented in writing. Mitchell College also needs an official transcript.

AR at 175. At the impartial hearing, Mrs. Sabatini testified that she then spoke to Dwyer about these matters, and that he agreed to perform these tasks within three weeks, but he did not do so. She stated that she made a follow-up telephone call to Dwyer in April, and he stated that he had forgotten about it but would discuss it with Mr. Robinson, the principal of East High School, "right away." IHT at 31.

Aaron also testified that he met with Dwyer around the beginning of February 1999, and that he gave Dwyer Mitchell's course catalog as well as some other pamphlets and booklets about Mitchell. He stated that he and Dwyer agreed that Dwyer would review the materials and, within the following two to three weeks, meet with Robinson to discuss what courses would be appropriate for Aaron to take at Mitchell in order to obtain his high school diploma. Aaron testified that Dwyer promised to get back to Aaron within that same time frame, but that he never did. IHT at 100.

There is some indication in the record, then, that the District itself is partly to blame for any uncertainty that exists concerning the appropriateness of Mitchell as a residential setting for Aaron to work toward his high school diploma. If that is

in fact what transpired, the District should not be heard to complain that plaintiffs should be denied preliminary injunctive relief because they have not demonstrated that Mitchell can provide Aaron with the educational services that he needs.

■ Aside from the factual issue of whether Mitchell would be able to provide Aaron with educational services that would suffice for him to obtain a high school diploma, there remains the legal issue of whether IDEA permits payment of college tuition as a form of compensatory education. I believe that plaintiffs have shown a clear likelihood of success on this issue as well.

Again, it is important not to be overly concerned with semantics. What matters is not that plaintiffs seek funds to allow Aaron to attend a college, but rather the ultimate purpose for doing so: for Aaron to obtain a high school diploma. The question presented, then, is not whether a plaintiff can seek relief under IDEA for the purpose of obtaining a college *degree.* Rather, the issue is whether funds may be disbursed under IDEA for college *courses* where the intent is to apply credit for those courses toward the acquisition of a *high school* diploma. To concentrate solely on the type of school at which Aaron seeks to receive educational services, while ignoring his ultimate goal in doing so, would elevate form over substance.

In support of its assertion that the relief plaintiffs seek is not obtainable under IDEA, the District cites *Straube v. Florida Union Free Sch. Dist.,* 801 F.Supp. 1164, 1181 (S.D.N.Y.1992), in which the court held that compensatory education "cannot be granted in the form of college tuition." The court therefore denied the plaintiffs' request that the defendants pay their son's tuition at a local college specializing in education of dyslexic students so that he could receive his high school diploma. The court cited no cases to support its holding that payment of college tuition was prohibited under IDEA, however. Moreover, the court in *Straube* relied on two Second Circuit cases, *Antkowiak,* 838 F.2d at 640–41, and *Tucker,* 873 F.2d at 568, for the proposition that "parents may not be reimbursed for the unilateral placement of their child in an unapproved private school even if that placement would have been appropriate under the IDEA." *Straube,* 801 F.Supp. at 1181. The court recognized that other circuits had not followed that rule, citing *Carter v. Florence County Sch. Dist. Four,* 950 F.2d 156 (4th Cir.1991), and noted that a petition for certiorari had been filed in *Carter,* but stated that the court was "bound by the law in the Second Circuit." *Straube,* 801 F.Supp. at 1181.

After *Straube* was decided, however, the Supreme Court granted certiorari in *Carter,* and, as explained previously, its later decision in that case expressly overruled prior Second Circuit case law holding that under IDEA, students can only be placed in state-approved schools. *Carter* makes clear that in cases brought under IDEA, courts should always remain mindful of Congress's intent in enacting the statute, which was "to ensure that children with disabilities receive an education that is both appropriate and free." *Carter,* 510 U.S. at 13, 114 S.Ct. 361. Noting that IDEA authorizes courts to "grant such relief as the court determines is appropriate," *id.* at 15–16, 114 S.Ct. 361 (quoting 20 U.S.C. § 1415(e)(2)), the Court in *Carter* also stated that " 'equitable considerations are relevant in fashioning relief,' and the court enjoys 'broad discretion' in so doing." *Id.* at 16, 114 S.Ct. 361 (quoting *School Committee of Burlington v. Department of Educ. of Massachusetts,* 471 U.S. 359, 374, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985)).

In fact, compensatory education itself beyond the age of twenty-one is not expressly authorized by IDEA, but rather is a creature of case law. The concept stems from the Supreme Court's decision in *Burlington,* 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385, in which the Court held that courts' authority to grant relief under IDEA "includes the power to order school

authorities to reimburse parents for their expenditures on private school education for a child if the court ultimately determines that such placement, rather than a proposed I[ndividualized] E[ducation] P[rogram], is proper under the Act." *Id.* at 369, 105 S.Ct. 1996.

Courts of appeals in several circuits, including the Second Circuit, have extended the Supreme Court's rationale in *Burlington* to support the award of compensatory education as "appropriate relief" under IDEA. *See Pihl v. Massachusetts Dep't of Educ.,* 9 F.3d 184, 188–89 (1st Cir.1993); *Burr v. Ambach,* 863 F.2d 1071, 1078 (2d Cir.1988), *vacated and remanded sub nom. Sobol v. Burr,* 492 U.S. 902, 109 S.Ct. 3209, 106 L.Ed.2d 560 (1989), *reaff'd on reconsideration, Burr v. Sobol,* 888 F.2d 258 (1989); *Lester H. v. Gilhool,* 916 F.2d 865, 872–73 (3d Cir.1990), *cert. denied,* 499 U.S. 923, 111 S.Ct. 1317, 113 L.Ed.2d 250 (1991); *Hall v. Knott County Bd. of Educ.,* 941 F.2d 402, 407 (6th Cir.1991), *cert. denied,* 502 U.S. 1077, 112 S.Ct. 982, 117 L.Ed.2d 144 (1992); *Miener v. State of Missouri,* 800 F.2d 749, 753 (8th Cir.1986); *Jefferson County Bd. of Educ. v. Breen,* 853 F.2d 853, 857–58 (11th Cir.1988). Courts have likewise held that compensatory education may be awarded even after a person who has been denied a FAPE reaches the age of twenty-one, which under the terms of the statute is the upper age limit for entitlement to a FAPE. *See* 20 U.S.C. § 1412(a)(1); *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.,* 172 F.3d 238, 249 (3d Cir.1999); *Pihl,* 9 F.3d at 189; *Burr,* 863 F.2d at 1078 (noting that person who was deprived of a FAPE before turning twenty-one "cannot go back to his previous birthdays to recover and obtain the free education to which he was entitled when he was younger"). Thus, the fact that a particular form of relief is not expressly provided for by IDEA does not necessarily preclude a court from awarding such relief, given the court's broad discretion in determining what relief is appropriate in light of all the equities in the case.

The other case relied upon by defendant is *Wenger v. Canastota Central Sch. Dist.,* 979 F.Supp. 147 (N.D.N.Y.1997), in which the court upheld the SRO's denial of the plaintiffs' request for compensatory education for their son. *Wenger,* however, is factually not at all similar to the instant case, because in *Wenger* the child in question had been in a *coma* since a 1991 automobile accident. Physicians had determined him to be "in a persistent vegetative state." *Id.* at 149 n. 3. Thus, it is not even clear how he *could* have received any educational services.

In addition, although defendant states that *Wenger* was affirmed by the Second Circuit in an unpublished decision, the use of the word "affirmed" is misleading as it relates to plaintiffs' claims for compensatory education in the case at bar. The Second Circuit did affirm the district court's decision dismissing the claims brought by the plaintiff father on his *own* behalf, but postponed consideration of the appeal as it related to the claims brought on behalf of the son, *i.e.* the claims for compensatory education. *Wenger v. Canastota Central Sch. Dist.,* 181 F.3d 84 (table), 1999 WL 314165 (text) (2d Cir. May 17, 1999). At any rate, unpublished decisions of the Court of Appeals have no precedential authority; *see* 2d Cir.R. § 0.23.

The District also notes that in *Wenger,* the district court stated that it accorded some deference to the SRO's determination, since the SRO possessed some expertise in the field of education. *Wenger,* 979 F.Supp. at 151. In the instant case, however, the only administrative official who has yet rendered a decision in this matter—the IHO—has found that Mitchell *is* appropriate for Aaron, and I have no basis at this point for believing that the SRO, when he does issue a decision, is likely to conclude otherwise. For me to deny plaintiffs' motion for a preliminary injunction, then, would require me to rule *contrary* to the most recent administrative ruling in this case.

None of this means, of course, that plaintiffs *will* ultimately necessarily succeed on the merits in this case. Although there is evidence before me that placement at Mitchell would afford Aaron his right to a FAPE, that has not yet actually been established in this litigation. In addition, even if I later determine that Mitchell is indeed an appropriate placement for Aaron, "the appropriate and reasonable level" of tuition for which the District should be responsible will remain to be decided. *Carter,* 510 U.S. at 16, 114 S.Ct. 361. At this point, however, plaintiffs are faced with the threat of imminent, irreparable injury if preliminary relief is denied, and I therefore find that the balance of hardships clearly weighs in favor of granting the relief sought.

## CONCLUSION

Plaintiffs' motion for a preliminary injunction (Docket Item 2) is granted in part. Defendant is hereby ordered to: implement the decision of Impartial Hearing Officer Joan B. Alexander, Esq., dated September 24, 1999 and place plaintiff Aaron Sabatini at Mitchell College in New London, Connecticut, pending further order of this court as part of its obligation to provide plaintiff with a free appropriate public education, as required by the Individuals with Disabilities Act. Defendant must make whatever financial arrangements are necessary to allow Aaron to be enrolled at Mitchell College at the beginning of the spring semester in January 2000.

The parties are directed to arrange a conference with the Court within twenty days of entry of this Decision and Order to schedule proceedings for a hearing on plaintiffs' application for a permanent injunction.

**IT IS SO ORDERED.**