Daryl BUTLER, Plaintiff,

v.

SOUTH GLENS FALLS CENTRAL SCHOOL DISTRICT; William Elder, Individually, and as President of the Board of Education of the South Glens Falls Central School District; James P. McCarthy, Individually, as Superintendent of the District and as 504 Compliance Officer; Richard Lamarche, Individually and as Junior High School Vice Principal, and Committee on Special Education Chairperson; Joann Chambers, Individually, and as School District Psychologist and CSE member; Clarence Pelkie, Individually, and as past District High School Principal; Phyllis Corcoran, Individually, and as School Health Aide; Patricia Thomas, Individually, and as Vice Principal and Director of Pupil Services; Barbara Baker, Individually, and as School Nurse, and Committee on Special Education Chairperson; Jon Larson, Individually, and as School Psychologist and CSE member; Robert Evans, Individually, and as School Physician, and

CSE member; H. Whitney Butterfield, Individually, and as CSE Member; George Amedore, Individually, and as Assistant Superintendent and 504 Compliance Officer; Steven Black, Individually, and as High School Principal and 504 Compliance Officer; Antoinette Cornute, Individually, and as High School Guidance Counselor; Janie Cornell, Individually, and as Assistant Superintendent, and Coordinator of Pupil Services; Sheila Itzo, CSE member and Special Education teacher; Ann Eiken, Individually, and as High School Nurse; and Beverly Petteys, Individually, and as Tutor, Defendants.

No. 98–CV–397.

United States District Court,
N.D. New York.

July 27, 2000.

Michael H. Sussman, Goshen, NY, for plaintiff.

Hogan & Sarzynski, LLP, Binghamton, NY (Edward J. Sarzynski, of counsel), for defendants.

### MEMORANDUM–DECISION AND ORDER

HURD, District Judge.

## I. INTRODUCTION

Plaintiff Daryl Butler ("Butler" or "plaintiff") commenced the instant action pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400–1487; § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; 42 U.S.C. § 1983; the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213; and the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g, claiming that the defendants failed to provide him with an appropriate public education and discriminated against him based upon his disability. The plaintiff has also asserted various state law claims. Butler seeks an award of compensatory education, reimbursement for tuition and related services, as well as compensatory and punitive damages.

The defendants have moved for summary judgment pursuant to Fed.R.Civ.P. 56.[1] Oral argument was heard on February 18, 2000, in Albany, New York. Decision was reserved.

## II. FACTS

Butler entered South Glens Falls Junior High School in 1990. Prior to enrolling in the South Glens Falls Central School District ("District"), he attended Lake George School District, where he was classified as a special education/emotionally disturbed student and an individualized education program ("IEP") was developed for him. This IEP was maintained upon entering South Glens Falls Junior High School.

In January 1991, Butler was declassified and no longer received special education services. He continued to have behavior and attendance problems and failed several courses. In June 1993, plaintiff was evaluated for possible learning disabilities. He tested in the average IQ range, but was diagnosed with Attention Deficit Hyperactivity Disorder. In September 1993, he stopped attending high school after a dispute with the school principal regarding parking privileges and the school nurse about taking his medication.

Plaintiff was classified as having multiple disabilities by the Committee on Special Education ("CSE") in February 1994 and a B.O.C.E.S. day treatment was recommended. However, his mother, Linda Butler Askew ("Mrs.Askew") rejected the program as inappropriate for her son.

---

1. The defendants move for summary judgment on all but plaintiff's ADA claim.

Mrs. Askew also rejected a home tutoring program. She then requested a hearing.

On January 9, 1995, the hearing officer determined that it was error to declassify Butler in 1991 because the evidence "clearly shows Daryl as a child with behavioral control and educational problems that had been evident and observable for several years...." (Baker Aff. Ex. 1.) The hearing officer also noted that after he was declassified, the District made no attempt to provide him with regular counseling and the counselor assigned to him never met with him. The hearing officer further found that the IEP developed in June 1994 contained several inadequacies. He recommended classifying plaintiff as "Other Health Impaired," *Id.*, and develop an IEP which includes tutoring and counseling. Neither plaintiff nor his mother appealed this determination.

The CSE met in May 1995 to develop another IEP. At this time, it recommended home tutoring for the summer to allow Butler to adjust to the academic setting for the fall. Butler's mother would not consent to this IEP. Nor would she consent to two other IEP's which the District developed in November 1995 and June 1996. Instead, she enrolled plaintiff in a home school program through the Clonlara School ("Clonlara"). The district requested a hearing regarding her course of action.

On February 27, 1997, the hearing officer determined that, after the first hearing determination, the District attempted to provide Butler with an appropriate education and developed IEP's in May 1995, November 1995, and June 1996 which were appropriate for Butler's educational needs. The hearing officer denied Mrs. Askew's demand for tuition reimbursement because she did not show that Clonlara was an adequate and appropriate school. The District was directed to implement its June 1996 IEP and provide Butler with home tutoring until he obtained a GED or for 18 months, whichever was sooner.

Mrs. Askew appealed this decision to the State Reviewing Officer ("SRO").

On November 4, 1997, the SRO found that the 1995–1996 and 1996–1997 IEP's were inappropriate, however, affirmed the decision not to award tuition reimbursement or reimbursement for related services and materials. Plaintiff then commenced this action.

## III. DISCUSSION

### A. *Summary Judgment Standard*

Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Lang v. Retirement Living Pub. Co.*, 949 F.2d 576, 580 (2d Cir.1991). The moving party carries the initial burden of demonstrating an absence of a genuine issue of material fact. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir.1990). Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Project Release v. Prevost*, 722 F.2d 960, 968 (2d Cir.1983).

When the moving party has met the burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, 106 S.Ct. 1348. At that point, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56: *Liberty Lobby Inc.*, 477 U.S. at 250, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. 1348. To withstand a summary judgment motion, evidence must ex-

ist upon which a reasonable jury could return a verdict for the nonmovant. *Liberty Lobby, Inc.,* 477 U.S. at 248–49, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. 1348. Thus, summary judgment is proper where there is "little or no evidence ... in support of the non-moving party's case." *Gallo v. Prudential Residential Servs.,* 22 F.3d 1219, 1223–24 (2d Cir.1994) (citations omitted).

### B. Statute of Limitations

■ The defendants argue that plaintiff's IDEA claims are barred by the statute of limitations. Since IDEA does not provide for a statute of limitations, federal courts must apply the statute of limitations applicable to the most analogous state cause of action. *See Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). The Second Circuit has determined that an action under § 1415 of the IDEA appealing an administrative proceeding is analogous to an Article 78 proceeding and therefore, the four month statute of limitations applicable to Article 78 proceedings [2] applies to such actions. *See Adler v. Education Dep't of New York,* 760 F.2d 454, 457 (2d Cir.1985); *see also Heldman v. Sobol,* 962 F.2d 148, 158 n. 10 (2d Cir.1992) (holding that the four month statute of limitations applies if the complaint "constituted an appeal from the Commissioner's decision"). However, a three year statute of limitations applies where the complaint alleges that the defendant failed to comply with the procedural safeguards provided in the IDEA.[3] *See Mason v. Schenectady City Sch. Dist.,* 879 F.Supp. 215, 219–20 (N.D.N.Y.1993).

In the present case, plaintiff does not contend that the district did not comply with the procedural safeguards found in the IDEA. Plaintiff's complaint essentially is an appeal from previous administrative proceedings where review of the administrative record is required. Therefore, the four month statute of limitations is applicable here.

■ The first hearing decision was rendered on January 9, 1995. Neither plaintiff, who was eighteen years old at the time, nor his mother appealed this decision. Therefore, plaintiff was required to commence suit with respect to events which were the subject of this decision on or before May 9, 1995, four months after the decision was rendered. Plaintiff's failure to do so bars review of those claims. Consequently, plaintiff's claims for damages with respect to the defendants' failure to provide an appropriate education before the first hearing officer's decision are barred by the statute of limitations.

Plaintiff argues that the statute of limitations should be tolled by applying "the doctrine of continuing violations," (Pl.'s Mem. of Law in Opp'n at 4), because the plaintiff alleges the defendants engaged in a continuing practice of denying him educational benefits. However, administrative and judicial remedies were available to plaintiff after the hearing officer's decision was rendered. *See* 20 U.S.C. § 1415. If plaintiff was aggrieved by this decision, he is not entitled to sit idly by and then contest the decision in a later lawsuit. He is required to pursue available remedies. Therefore, plaintiff's request to toll the statute of limitations in this case is rejected.

■ Defendants claim that plaintiff's claims involved in the SRO's decision are similarly barred by the four month statute of limitations. The SRO's decision was dated November 4, 1997, and is deemed received by the plaintiff three days after it is sent. *See* Fed.R.Civ.P. 6(e). Thus, plaintiff is deemed to have received the decision on November 7, 1997. Four

---

**2.** *See* N.Y.C.P.L.R. § 217 (McKinney 1990).

**3.** *See* C.P.L.R. § 214(2) which provides that "an action to recover upon a liability, penalty

or forfeiture created or imposed by statute" must be commenced within three years.

months from November 7, 1997 is March 7, 1998. March 7, 1998 was a Saturday, therefore, plaintiff was not required to file his·complaint until the following Monday, March 9, 1998,[4] which he did. Therefore, plaintiff's claims for damages premised on the SRO's decision are timely.

### C. *Compensatory Education*

"Generally, under the IDEA, 'a disabled child does not have a right to demand a public education beyond the age of twenty-one.'" *Wenger v. Canastota Cent. Sch. Dist.*, 979 F.Supp. 147, 150–51 (N.D.N.Y. 1997) (quoting *Mrs. C. v. Wheaton*, 916 F.2d 69, 76 (2d Cir.1990)), *aff'd*, 208 F.3d 204 (2d Cir.2000). However, an award of compensatory education for a child over the age of twenty-one may be appropriate "where there has been a gross violation of the IDEA." *Id.* at 151 (citations omitted).

■ The defendants contend that the plaintiff has failed to produce any evidence that they committed gross violations of the IDEA. However, contrary to the defendants' claims, plaintiff has come forward with sufficient evidence to survive summary judgment on this issue. First, the district improperly classified plaintiff in 1991, thereby depriving him of certain special education services. In addition, no IEP's were developed for the 1993–1994 school year, and the IEP's developed for the 1994–1995, 1995–1996, and 1996–1997 school years were found inappropriate for plaintiff's educational needs. Thus, for a period of at least six years, plaintiff was deprived of an appropriate educational program. Therefore, a question of fact exists as to whether the defendants' conduct constitutes a gross violation of the IDEA.

### D. *Compensatory and Punitive Damages*

The defendants contend that the plaintiff cannot recover compensatory or puni-

tive damages under the IDEA, § 1983, or § 504.

### 1. *Damages under the IDEA*

■ The plaintiff claims that the defendants failed to provide him with a free appropriate public education. As a result, plaintiff contends that he is entitled to compensatory and punitive damages under the IDEA.

The IDEA authorizes a district court "to grant such relief as the court determines is appropriate." § 1415(i)(2)(B)(iii). "This relief may include tuition reimbursement," *Searles v. Board of Educ. of the Ellenville Cent. School Dist.*, Nos. 96–CV–0637, 97–CV–0572, 1999 WL 34983, at *3 (N.D.N.Y. Jan.13, 1999) (citing *School Committee of Town of Burlington v. Department of Educ. of Com. of Massachusetts*, 471 U.S. 359, 370–71, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985); *Garro v. Connecticut*, 23 F.3d 734, 736 (2d Cir.1994); *Mrs. C.*, 916 F.2d at 75; *Burr v. Ambach*, 863 F.2d 1071, 1077 (2d Cir.1988), *vacated on other grounds sub nom. Sobol v. Burr*, 492 U.S. 902, 109 S.Ct. 3209, 106 L.Ed.2d 560 (1989)), but does not include compensatory or punitive damages. *See Sellers v. School Board of Mannassas*, 141 F.3d 524, 526–28 (4th Cir. 1998) (holding that "[t]ort-like damages are simply inconsistent with IDEA's statutory scheme" which strongly favors provision or restoration of educational rights); *see also Heidemann v. Rother*, 84 F.3d 1021, 1033 (8th Cir.1996) (stating that general or punitive damages are unavailable under the IDEA); *Wenger*, 979 F.Supp. at 152 (holding that "[t]he IDEA does not provide for compensatory money damages"); *Charlie F. v. Board of Educ. of Skokie Sch. Dist.*, 98 F.3d 989, 991 (7th Cir.1996) (stating that the relief intended under the IDEA includes only prospective or restitutionary types of relief, not general damages). Consequently, plaintiff may not recover the compensatory and punitive damages he seeks under the IDEA.

4. *See* Fed.R.Civ.P. 6(a).

### 2. Damages under § 1983

■ Plaintiff brought his § 1983 claim based upon alleged violations of the IDEA. The defendants contend that money damages are not available under § 1983 for IDEA violations, and therefore, plaintiff's § 1983 claim must be dismissed.

While the Second Circuit has held that "parents are entitled to bring a § 1983 action based on alleged violations of the [IDEA] or the Due Process and Equal Protection clauses of the federal Constitution," *Mrs. W. v. Tirozzi,* 832 F.2d 748, 755 (2d Cir.1987), it has not yet decided the question of whether money damages are available under § 1983 for IDEA violations. However, the United States Supreme Court's decision in *Franklin v. Gwinnett County Public Schools,* 503 U.S. 60, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992), provides a persuasive reason for allowing such claims. The issue in *Franklin,* whether an implied right of action for money damages exists under § 1983 pursuant to Title IX of the Education Amendment of 1982, is similar to the issue in the instant action. In answering in the affirmative, the Supreme Court stated that "[t]he general rule ..., is that absent clear direction to the contrary by Congress, the federal courts have the power to award any appropriate relief in a cognizable cause of action brought pursuant to a federal statute." *Id.* at 70–71, 112 S.Ct. 1028.

Examination of the plain language and legislative history of the IDEA reveals that there is no "clear direction" from Congress sufficient to rebut the presumption that "any appropriate relief" is available. "In 1984, the Supreme Court held that, based on the comprehensive remedial scheme of the EHA [Education of the Handicapped Act], Congress intended to foreclose private enforcement of special education rights through laws such as Section 504 and Section 1983." *R.B. on Behalf of L.B. v. Board of Educ. of New York,* 99 F.Supp.2d 411, 417 (S.D.N.Y. 2000) (citing *Smith v. Robinson,* 468 U.S. 992, 1012–13, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984)). In response, Congress amended the EHA to add § 1415(f), which states: "Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, title V of the Rehabilitation Act of 1973, or other Federal statutes protecting the rights of handicapped children and youth...." Legislative history also reveals that Congress intended § 1415(f) to govern actions under § 1983. *See* H.R.Conf.Rep. No. 99–687, at 6 (1986), reprinted in 1986 U.S.C.C.A.N. 1807, 1809. Therefore, in light of the fact that the Second Circuit has not yet decided this precise issue and Congress has not clearly precluded the type of claim which the plaintiff asserts, it would be unwise to bar his § 1983 claim as a matter of law.

### 3. Damages under § 504

■ A plaintiff aggrieved by a violation of § 504 of the Rehabilitation Act may be entitled to compensatory damages. *See Bartlett v. New York State Bd. of Law Examiners,* 156 F.3d 321, 331 (2d Cir. 1998), *judgment vacated on other grounds,* —— U.S. ——, 119 S.Ct. 2388, 144 L.Ed.2d 790 (1999). However, the plaintiff must demonstrate intentional discrimination. *Id.* "Something more than a mere violation of the IDEA is necessary in order to show a violation of Section 504 in the context of educating children with disabilities." *Wenger,* 979 F.Supp. at 152. Rather, a plaintiff must demonstrate that the "school district acted with bad faith or gross misjudgment." *Id.* (citing *Brantley v. Independent Sch. Dist. No. 625,* 936 F.Supp. 649, 657 (D.Minn.1996)). The plaintiff is not required to show "personal animosity or ill will. Rather, intentional discrimination may be inferred when a policymaker acted with at least deliberate indifference to the strong likelihood that a violation of federally protected rights will result from the implementation of the challenged policy or custom." *Bartlett,* 156 F.3d at 331 (citations omitted) (internal quotations omitted).

In this case, the plaintiff has presented sufficient evidence to survive summary judgment with respect to his claim for compensatory damages under the Rehabilitation Act. The plaintiff has presented evidence that the defendant school officials failed to develop IEP's for the plaintiff, developed several IEP's that were determined to be inappropriate for his educational needs, and failed to provide him with certain special education services. Such conduct, if proven, may constitute deliberate indifference to the strong likelihood that plaintiff's rights were being violated.

■ The Second Circuit has not yet decided whether punitive damages are available under § 504. However, "several Courts of Appeal have held that the Supreme Court's decision in *Franklin v. Gwinnett County Public Schools* [503 U.S. 60], 112 S.Ct. 1028 (1992), implies that the [Rehabilitation] Act should be read as authorizing all traditional legal and equitable remedies." *Zaffino v. Surles*, No. 91 CIV. 1637(MGC), 1995 WL 146207, at * 2 (S.D.N.Y. March 31, 1995). Thus, several courts have determined that, pursuant to *Franklin,* punitive damages are included in the full panoply of remedies available under the Rehabilitation Act, absent clear direction from Congress. *See id.; see also DeLeo v. City of Stamford,* 919 F.Supp. 70, 73 (D.Conn.1995); *Kedra v. Nazareth Hosp.,* 868 F.Supp. 733 (E.D.Pa.1994); *Howe v. Hull,* 873 F.Supp. 72 (N.D.Ohio 1994). In light of these authorities, plaintiff may be entitled to recover punitive damages from the individual defendants pursuant to § 504.[5]

### E. *Qualified Immunity*

■ The doctrine of qualified immunity "shields government officials performing discretionary functions from being held liable for civil damages arising from their actions which do 'not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *P.C. v. McLaughlin,* 913 F.2d 1033, 1039 (2d Cir.1990) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Qualified immunity "affords protection to a government official only from suits in his individual capacity." *Id.* A decision in favor of a public official based on qualified immunity is appropriate if: (1) the conduct attributed to him is not prohibited by federal law; or (2) if such conduct is so prohibited but the plaintiff's right not to be subjected to such conduct was not clearly established at the time of the defendant's actions; or (3) if it was not objectively reasonable for the official to know that his conduct violated that right. *See X–Men Sec., Inc. v. Pataki,* 196 F.3d 56, 65–66 (2d Cir.1999).

■ To defeat a qualified immunity defense in an IDEA case alleging the right to a free appropriate public education, a plaintiff must show that the right to a free appropriate education "was 'clearly established' in more than just a general sense; that is, it must be demonstrated that the particular actions taken by defendants were impermissible under law established at the time." *McLaughlin,* 913 F.2d at 1040. With respect to § 504 Rehabilitation Act claims, "the 'clearly established law' concerning § 504 indicates that its central purpose is to assure that handicapped individuals receive evenhanded treatment in relation to the nonhandicapped." *Id.* at 1041. (citations omitted) (internal quotations omitted).

At the time of the defendants' action, IDEA clearly established a requirement that an IEP addressing the specific needs of the particular child must be developed and implemented. *See* 20 U.S.C. § 1414. The Rehabilitation Act's prohibition against discrimination based upon disability was also clearly established. *See* 29 U.S.C. § 794. Further, it was not objec-

---

5. Municipal corporations are immune from punitive damages claims. *See City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981); *United States ex rel. Graber v. City of New York,* 8 F.Supp.2d 343, 348–49 (S.D.N.Y.1998).

**422**

tively reasonable for the defendants to believe that failing to develop IEP's which contained the required information and disciplining the plaintiff for behavior related to his disability did not violate his statutory rights. Therefore, the individual defendants in this case are not entitled to qualified immunity.

## F. FERPA

■ FERPA provides that:

No funds shall be made available under any applicable program to any educational agency or institution which has a policy of denying, or which effectively prevents, *the parents of students* who are or have been in attendance at a school of such agency or at such institution ... the right to inspect and review the education records of their children.

§ 1232g(a)(1)(A) (emphasis added). Plaintiff's complaint alleges that he, through his mother, Mrs. Askew, requested access to all of his educational records as well as a copy of defendants' policies and procedures regarding access to and keeping of student records, which defendant failed to provide. (*See* Compl. ¶¶ 82, 83.) However, these claims belong to Mrs. Askew, not the plaintiff. As she is not a party to this lawsuit, plaintiff's FERPA claim must be dismissed.

## G. State Law Claims

The defendants argue that there is no legally recognizable claim of breach of contract or educational malpractice with respect to educational services. Plaintiff failed to assert any opposition regarding these issues. Therefore, plaintiff's sixth and eighth causes of action for breach of contract and educational malpractice must also be dismissed.[6]

## IV. CONCLUSION

To sum up, questions of fact exist which preclude dismissal of plaintiff's claims for compensatory education under the IDEA from the State Reviewing Officer's decision of November 4, 1997, and for compensatory and punitive damages under § 1983 and § 504 of the Rehabilitation Act. However, plaintiff cannot recover compensatory or punitive damages under the IDEA, and therefore, that claim must be dismissed. Finally, plaintiff's FERPA and state law claims must also be dismissed. Defendants' remaining arguments have been considered and rejected.

Based upon the foregoing, it is

ORDERED, that

1. Defendants' motion for summary judgment is GRANTED in part and DENIED in part;

2. Defendants' motion is granted to the extent that

a. Plaintiff's claim for damages under the IDEA from the January 9, 1995 hearing officer's decision is dismissed;

b. Plaintiff's claims for compensatory and punitive damages under the IDEA are dismissed;

c. Plaintiff's FERPA claim is dismissed; and

d. Plaintiff's state law claims for breach of contract and educational malpractice are dismissed;

3. Defendants' motion is denied in all other respects.

IT IS SO ORDERED.

6. Further, it should be noted that dismissal is also appropriate pursuant to prevailing New York State law. *See Hoffman v. Board of Educ. of New York,* 49 N.Y.2d 121, 125, 400 N.E.2d 317, 319, 424 N.Y.S.2d 376, 378 (1979) (holding that a cause of action for educational malpractice "should not, as a matter of public policy, be entertained by the courts of this State.") (citing *Donohue v. Copiague Union Free School Dist.,* 47 N.Y.2d 440, 444, 391 N.E.2d 1352, 1354, 418 N.Y.S.2d 375, 377 (1979)).