**J.R. By and Through her parents and next friends, Mr. and Mrs. R, and Mr. & Mrs. R, Plaintiffs,**

v.

**WATERBURY BOARD OF EDUCATION, Valerie Stolfi-individually and in her official capacity, Barbara Wiggins-individually and in her official capacity, Elizabeth Gallagher-individually and in her official capacity, City of Waterbury, Goodwill Industries of Western Connecticut, Inc., Laurel Jordan, Maria Castro, Ilona Leffingwell, Laidlaw Transit, Inc., Jacqueline Recchia, Security Services of Connecticut, Inc., Joshua Vega, Jeffrey Small, the Connecticut Department of Education, Theodore Sergi, individually, and George Dowaliby, individually, Defendants.**

No. 3:00CV887 (WWE).

United States District Court, D. Connecticut.

July 20, 2001.

David C. Shaw, Law Offices of David C. Shaw, Bloomfield, CT, for Plaintiffs.

Charles Emil Oman, III, Elaine M. Skoronski, Corporation Counsel's Office, City of Waterbury, Waterbury, CT, Steven R. Dembo, Berman, Bournes, Aaron & Dembo, LLC, Wet Hartford, CT, Justin J. Donnelly, Sr., Windsor Locks, CT, John K. McDonald, Kernan & Henry, Waterbury, CT, Carla R. Walworth, Adam S. Bozek, Paul, Hastings, Janofsky & Walker, Stamford, CT, Jame L. Brawley, Patricia A. Tisdall, Morrison, Mahoney & Miller, LLP, Hartford, CT, Ronald Joseph Loricco, Frederick Joseph Trotta, LoRicco, Trotta & LoRicco, New Haven, CT, Jon S. Berk, Patty G. Swan, Gordon, Muir & Foley, Holly Jean Bray, Attorney's General's Office, Jeffrey C. Pingpank, Cooney, Scully & Dowling, Hartford, CT, for Defendants.

*RULING ON CONNECTICUT DEPARTMENT OF EDUCATION'S, THEODORE SERGI'S AND GEORGE DOWALIBY'S MOTION TO DISMISS*

EGINTON, Senior District Judge.

This case arises from the rape of a mentally retarded sixteen-year-old girl who was placed in a community based training program as part of an alternative education plan administered by her high school. The plaintiffs allege that the defendants Connecticut Department of Education ("CSDE"), Theodore Sergi ("Sergi"), and George Dowaliby ("Dowaliby") breached their duties under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, et seq. ("IDEA"), and 42 U.S.C. § 1983, causing the plaintiff J.R. to suffer severe physical and emotional trauma, sexually transmitted disease, depression, pain and suffering, and regression.

Defendants move to dismiss count ten (doc. # 108) of the plaintiffs' third amended complaint, on the grounds that (1) the Connecticut Department of Education is not a person within the meaning of 42 U.S.C. § 1983; (2) the alleged violation of § 1983 fails as a matter of law; (3) money damages are not recoverable for violation of the IDEA; (4) the plaintiffs have failed to state a claim for money damages under § 1983; (5) count ten of the plaintiffs' third amended complaint fails to state a claim for violation of the IDEA; and (6) the individual state defendants have qualified immunity from suit. For the reasons stated below, this motion will be denied.

**BACKGROUND**

Plaintiff J.R. was placed in an alternative education plan after evaluation by a school psychologist employed by the Waterbury Board of Education. The evaluation was prompted by plaintiffs' allegations

of an inadequate program and support within J.R.'s high school, and concerns about J.R.'s personal safety due to her excessive compliance, lack of self-protection skills, and inability to associate consequences with her actions. The alternative education plan included homebound instruction, and a Community Based Training ("CBT") program to provide social and job skills in a community setting.

The complaint alleges that the defendants Waterbury School Board, Elizabeth Gallagher, and Barbara Wiggins placed J.R. in the CBT program at the Goodwill Store in Waterbury even though they had established no policies, procedures, or minimum guidelines to assure that the special education students at vocational sites were safe, adequately supervised, and had their special education needs addressed.

J.R. was assigned to spend some of her day at Goodwill Industries, and J.R.'s mother agreed to the arrangement after receiving personal assurances that J.R. would be accompanied by an adult at all times.

J.R. was transported from her home to Goodwill by defendant bus company Laidlaw. Defendants Maria Castro and Valerie Stolfi were supposed to meet J.R. and accompany her into the Goodwill store. On January 26, 1999, Laidlaw bus driver Jacqueline Recchia dropped J.R. off at the Goodwill store, and neither defendants Castro nor Stolfi were on hand to meet her. Recchia watched J.R. enter the Goodwill store alone.

Once inside the store, J.R. was approached by Goodwill employee Jeffrey Small. Small had a criminal arrest record for sexual assault and was listed on the Connecticut Department of Public Safety Sex Offender Registry. Small took J.R. to a trailer located in the parking lot of Goodwill's facility, where Small forced J.R. to engage in oral and vaginal sex.

Defendant Joshua Vega was employed by Security Services to look for security breaches within the Goodwill facility. During his rounds, Vega witnessed Small and J.R. in the midst of an oral sexual act in the trailer. Vega made no attempt to intervene or to stop the act. Vega reported the incident the next day to his employer, Security Services, which notified the principal of Wilby High School. Vega identified J.R. from a photograph provided by the school. J.R. was subsequently examined by a physician who confirmed that vaginal intercourse had taken place.

Stolfi told investigators after the assault that the sexual contact between Small and J.R. was consensual. Plaintiffs argue that due to J.R.'s age and cognitive defects, J.R. was unable to consent to sexual contact with defendant Small. Plaintiffs contend J.R. has suffered and will continue to suffer physical and psychological injuries, some of them permanent.

The defendant Connecticut Department of Education was named in the complaint as the agency charged by law with the implementation of federal and state laws governing the provision of special education related services for students with disabilities. Defendant Theodore Sergi was joined as the Commissioner of the Connecticut Department of Education and is sued in his individual capacity. Defendant George Dowaliby was joined as the Bureau Chief of the Bureau of Special Education and Pupil Personnel Services of the Connecticut Department of Education and is also sued in his individual capacity.

## DISCUSSION

*Motion to Dismiss*

The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in

support thereof." *Ryder Energy Distribution v. Merrill Lynch Commodities, Inc.,* 748 F.2d 774, 779 (2d Cir.1984). When deciding a motion to dismiss, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

*Immunity from § 1983 action; § 1983 action for an IDEA violation*

For the sake of efficiency, this Court will address together the first two grounds of defendants' motion to dismiss. The defendants first state that the Court must dismiss the § 1983 action as to the CSDE because the Department is not a "person" within the meaning of § 1983. Second, the defendants claim that actions pursuant to § 1983 based on alleged violations of the IDEA are not viable, and fail as a matter of law.

It is well-settled in Connecticut courts and throughout the country that a state agency is not a "person" within the meaning of that section. *Martin v. UConn Health Care,* 2000 WL 303262 (D.Conn. Feb. 9, 2000). The Supreme Court held in *Will v. Michigan Department of State Police,* 491 U.S. 58,66, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), that in passing 42 U.S.C. § 1983, Congress had no intention of disturbing the states' sovereign immunity pursuant to the Eleventh Amendment. However, the plaintiff correctly asserts that § 1403 of the IDEA declares that a state "shall not be immune under the eleventh amendment to the Constitution of the United States from suit in Federal court for a violation of this chapter." Consequently, a § 1983 action is allowed against a state or an agency of the state under the plain language of the IDEA. If the plaintiffs were not permitted to seek relief under § 1983 for violation of the IDEA, no relief would be available to them.

The remedy for a violation of the IDEA is the withholding of federal funds, with no provision for a private cause of action. *Sean R. by Dwight R. v. Bd. Of Educ.,* 794 F.Supp. 467 (D.Conn.1992). *Sean R.* is similar to the case before the Court in that the plaintiffs sought relief under § 1983 for an IDEA violation. In order to determine whether a private right of action exists when the statute does not specifically provide for one, the district court applied the following test from *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975):(1) whether the plaintiffs are of a class for whose benefit the statute was enacted; (2) if there is legislative intent to provide or deny the remedy; (3) whether the private remedy is consistent with the underlying purpose of the legislation; and (4) if the cause of action is traditionally relegated to state law. The Supreme Court effectively overruled *Cort* in *Thompson v. Thompson,* 484 U.S. 174, 108 S.Ct. 513, 98 L.Ed.2d 512 (1988), by holding that unless the legislative intent can be inferred from the language of the statute or some other source, a private remedy will not be applied. However, the court in *Sean R.* relied on *Quackenbush v. Johnson City School Dist.,* 716 F.2d 141, 145 (1983), which confirmed that the legislative intent regarding a private right of action under IDEA is clear.

In *Quackenbush,* the Second Circuit held that the IDEA was enacted to protect the educational needs of handicapped children and to provide them with a free appropriate education. Therefore, the first element of the *Cort* test is satisfied; the plaintiff J.R. is of a class for whose

benefit the statute was enacted. *Quackenbush* indicated that it was "unthinkable" that Congress would have intended that a plaintiff should be left without a remedy when, through school district policy or misconduct of school officials or both, a handicapped child is deprived of procedural safeguards guaranteed by § 1415.[1]

This Court finds that the second element of the *Cort* test is satisfied, as the language of the IDEA does not indicate a congressional intent to preclude a plaintiff from seeking a remedy for violation of the Act. In fact, § 1403 of the IDEA paves the way for such relief for plaintiffs by allowing remedies both at law and in equity against a state for violation of the IDEA.

Elements three and four of the *Cort* test are also satisfied in the present case because the underlying purpose of the legislation is to protect the educational needs of handicapped children. The remedy the plaintiffs seek would aid this purpose by supplying a cause of action under § 1983 for the denial of procedural due process under 20 U.S.C. § 1415, without intrusion into an area traditionally committed to state law. *Sean R. by Dwight R.*, 794 F.Supp. at 470.

The defendants argue that the precedent set by the Second Circuit in *Mrs. W. v. Tirozzi*, 832 F.2d 748 (2d Cir.1987), authorizing a cause of action under § 1983 for a violation of the Education of the Handicapped Act ("EHA"), precursor to the IDEA, should be abandoned in favor of recent decisions in other circuits which have rejected the view that a claim under § 1983 may be predicated on a violation of the IDEA. Courts in the Second Circuit have adhered to the decision in *Mrs. W,*

and this Court will also follow the controlling law in this circuit.

Thus, this Court finds that although the Connecticut Department of Education is a state agency, and a state agency is not a "person" within the meaning of § 1983, Title 20 of the U.S.Code, § 1403, affords the plaintiffs the right to seek relief against a state agency in a federal court for violation of the chapter, to the same extent that the plaintiff could sue any public entity. This Court also finds that to disallow a § 1983 action for violations of the IDEA would be to deny the plaintiffs any remedy under the Act. Accordingly, the defendants' motion to dismiss will not succeed on these grounds.

*Money Damages for Violation of the IDEA*

The third ground of the defendants' motion to dismiss is that money damages are not recoverable for violations of the IDEA. They assert that although the Second Circuit has not rendered an opinion on this issue, "most courts have concluded that the IDEA permits the award of only those amounts necessary to reimburse the costs of educational expenses that should have been paid by a local or regional school district."

Upon a careful reading of the prayer for relief in the plaintiffs' third amended complaint, this Court fails to find a request for money damages under the IDEA. The plaintiffs request compensatory and punitive damages under 42 U.S.C. § 1983, for deprivation of rights of the plaintiff J.R. pursuant to the Fourteenth Amendment and the IDEA.

This Court finds that courts in the Second Circuit have addressed both the ques-

---

**1.** 20 U.S.C. § 1415(a) provides that "any State educational agency, State agency, or local educational agency that receives assistance under this subchapter shall establish and maintain procedures in accordance with this section to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of free appropriate public education by such agencies."

tion of money damages under the IDEA, and the question of money damages under § 1983 for violation of the IDEA. In March of 2000, the Second Circuit affirmed a district court opinion that the IDEA does not provide for money damages. *Wenger v. Canastota Central School District*, 208 F.3d 204, 2000 WL 305520 (2d Cir.2000). More recently, another district court held that money damages are recoverable under § 1983 for violations of the IDEA, after analyzing many of the cases cited by defendants in their motion to dismiss. *R.B. v. Bd. Of Educ. of the City of New York*, 99 F.Supp.2d 411 (S.D.N.Y.2000). In July of 2000, yet another district court held that although compensatory and punitive damages were not recoverable under the IDEA, money damages were available under § 1983 for IDEA violations. *Butler v. South Glens Falls School District*, 106 F.Supp.2d 414, 419–20 (N.D.N.Y.2000). Because the plaintiffs claim compensatory damages under § 1983 for a violation of the IDEA and not under the IDEA itself, this Court will not dismiss the plaintiffs' prayer for relief on the defendants' third stated ground.

*Stating a Claim for Punitive Damages under § 1983*

The defendants allege that the plaintiffs have failed to state a claim for punitive damages under 42 U.S.C. § 1983. The seminal case on this issue is *Smith v. Wade*, 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983), which held that "a jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." The Supreme Court elaborated that this threshold applies even when the underlying standard of liability for compensatory damages is one of recklessness.[2]

In the plaintiffs' third amended complaint, they assert, *inter alia*, that the state defendants failed to take action to protect IDEA children placed in vocational programs, had a duty under the IDEA and breached that duty, and that these actions constituted gross misjudgment. Without deciding the issue of qualified immunity here, we can consider that while the plain language used by the plaintiffs in these allegations does not rise to the level of what would commonly be considered reckless or callous indifference, the plaintiffs correctly point out that the Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. The plaintiffs assert that their extensive complaint provides clear and unambiguous notice that the plaintiff seeks punitive damages based on the reckless disregard of the state defendants to plaintiff J.R.'s federally protected rights. Consequently, this Court does not unequivocally find that the plaintiffs can prove no set of facts in support of their claim which would entitle them to relief, and will not dismiss count ten on this basis.

*Stating a Claim for Violation of IDEA*

The defendants next assert that the plaintiffs have failed to state a claim for a violation of the IDEA, and that the plaintiffs have cited no provision of the IDEA which was allegedly violated by the state defendants' failure to promulgate stan-

---

2. Due to Smith's qualified immunity as a prison guard, the judge instructed the jury that Wade could recover only if the defendants were guilty of "gross negligence" (defined as "a callous indifference or a thoughtless disregard for the consequences of one's act or failure to act") or "egregious failure to protect" (defined as "a flagrant or remarkably bad failure to protect") Wade. He reiterated that Wade could not recover on a showing of simple negligence.

dards governing the operation of private entities which provide vocational opportunities to special education students. The plaintiffs cite an Illinois case, *Corey H. v. Board of Educ. Of Chicago*, 995 F.Supp. 900 (N.D.Ill.1998), for the proposition that the state defendants in the present case are responsible under the IDEA for Waterbury's failure to comply with the IDEA. While that case is on point, this Court looks within the Second Circuit for guidance.

*Jose P. v. Ambach*, 669 F.2d 865 (2d Cir.1982), is instructive. The Second Circuit held that the state defendants could properly be found to have failed to meet the requirement of 20 U.S.C. § 1412(6), which provided that "the State educational agency shall be responsible for assuring that the local agencies comply with the policies of the EHA." The district court had concluded that while the primary responsibility was with the City of New York, the State Commissioner also bore a share of the responsibility because of his failure to enforce federal and state laws and to provide adequate supervision over the city school system to ensure compliance with his orders, and the Second Circuit affirmed.

In the present case, the applicable section in the IDEA is 20 U.S.C. § 1415(11), which states in pertinent part that "the State educational agency is responsible for ensuring that—(i) the requirements of this subchapter are met; and (ii) all educational programs for such children with disabilities in the State, including all such programs administered by any other State or local agency—(I) are under the general supervision of individuals in the State who are responsible for educational programs for children with disabilities; and (II) meet the educational standards of the State educational agency."

Construing the allegations in the plaintiffs' complaint as true, and drawing all reasonable inferences in their favor, this Court cannot dismiss this count with assurance that the plaintiffs can prove no set of facts in support of their claim. Rather, it is up to the trier of fact to determine what the duty of the state defendants entailed, and if they breached that duty. This Court will not dismiss on the ground that the plaintiffs have failed to plead a cause of action under the IDEA.

*Qualified Immunity by State Defendants*

The state defendants claim qualified immunity in their individual capacities. The doctrine of qualified immunity shields government officials performing discretionary functions from being held liable for civil damages arising from their actions which do not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Qualified immunity affords protection to a government official only from suits in his individual capacity. *P.C. v. McLaughlin*, 913 F.2d 1033, 1039 (2d Cir.1990).

The Second Circuit applies the following test to determine qualified immunity: a decision in favor of a public official based on qualified immunity is appropriate if (1) the conduct attributed to him is not prohibited by federal law; or (2) if such conduct is so prohibited but the plaintiff's right not to be subjected to such conduct was not clearly established at the time of the defendant's actions; or (3) if it was not objectively reasonable for the official to know that his conduct violated that right. *X–Men Sec., Inc. v. Pataki*, 196 F.3d 56, 65–66 (2d Cir.1999).

The defendants claim that it is far from clear under the statutes relied upon by the plaintiffs, the IDEA and C.G.S. § 10–76d(d),[3] that the state defendants had an

---

**3.** One of the provisions of C.G.S. § 10–76d(d) states that a local or regional board of edu-

obligation to promulgate standards relating to the provision of vocational opportunities by facilities such as the Goodwill Store where plaintiff J.R. was employed. The plaintiffs assert that the Court must decide what the state of the law was at the time of the actions complained of. They also assert that it is clear that the state defendants were required by policy and other actions to ensure that special education children were not placed by local schools in community agencies for special education vocational instruction unless their rights under the IDEA were secured.

The Court finds that the plaintiffs have sufficiently pled a violation of federal law under the IDEA and 42 U.S.C. § 1983 in their third amended complaint. They have also asserted that, as Commissioner of Education and Bureau Chief of the Bureau of Special Education respectively, defendants Sergi and Dowaliby should be expected to have a comprehensive and detailed understanding of all federal and state laws relating to special education. The Court will therefore not dismiss count ten on the basis of qualified immunity for the state defendants.

### CONCLUSION

For the reasons set forth above, the state defendants' motion to dismiss (doc. # 108) is DENIED.

cation may make agreements with a private school, or with any public or private agency or institution to provide necessary programs or services, but no expenditures shall be paid pursuant to the contract unless such contract

includes a description of the educational program and other treatment the child is to receive, and a statement of minimal goals and objectives.